Kellenbeck & Brash, vs. The State.

Eccleston, J., dissented.

---

GEORGE KELLENBECK and ANDREW BRASH, *vs.*
THE STATE OF MARYLAND.

An indictment, which charged that the traversers did "*feloniously, wilfully and unlawfully,*" set fire to, and burn and consume, "a certain building used as a brewery, for the manufacture of beer," is *defective* as an indictment for *arson*, because it omits to charge, that the burning was done "*maliciously.*"

It is also *defective* as an indictment for an offence, under the *second* clause of the fifth section of the act of 1809, ch. 138, because it fails to describe the building as "not parcel of any dwelling-house," which words constitute part of the *description of the crime*, and are included in the *enacting part* of the statute.

But since the act of 1852, ch. 63, such objections to the indictment, must be taken by *demurrer*, whether the case be tried before a jury or *submitted to the court*, otherwise the judgment upon it cannot be *reversed* by the appellate court.

ERROR to the Circuit Court for Allegany county.

The plaintiffs in error were indicted in the court below, for *feloniously, wilfully* and *unlawfully,* setting fire to and burning "a certain building, used as a brewery for the manufacture of beer." The indictment is sufficiently set out in the opinion of this court. The plea was *not guilty,* and the case was submitted to the court, (PERRY, J.,) for trial, who found the parties guilty, and passed judgment, as stated in the opinion of this court. To correct this judgment the present writ of error was sued out by the traversers.

The cause was argued before LE GRAND, C. J., ECCLE-STON, TUCK and BARTOL, J.

*Joseph A. Wickes,* for the plaintiffs in error, argued:

1st. That the offence charged in the third count of the indictment, upon which the court found the accused guilty, is not known to the laws of Maryland. It is not *arson,* neither is it a misdemeanor, created by the act of 1809, ch. 138, sec. 5, clause 2nd. The finding of the court was guilty of a *misdemeanor,* and it is to be presumed, the indictment was intended to embrace the offence created by the act of 1809. We will first consider the record upon this hypothesis. The object of the clause in question, was to punish offences not embraced by the *common law,* and the offences therein enumerated, are clearly distinguishable from the crime of *arson.* It includes such buildings as are there enumerated, which are *not parcel of a dwelling house.* This language is *descriptive* of the offence, and being so, the indictment should have followed it. Wilfully burning a mill, distillery, &c., is not an offence within this clause; an essential element of the offence is, that the mill, &c., should be *"not parcel of any dwelling-house."* The indictment should have followed the language of the act, and set forth, that the accused did feloniously, &c., set fire to a certain building used as. a brewery, for the manufacture of beer, *not parcel of any dwelling house,* and thus, by express words, have brought the offence within the substantive description made in the act of Assembly. *Arch. Cr. Pl.,* 43, 50,

52. *Whart. Cr. Law*, 132. 2 *Hale's P. C.*, 169. 7 *Car. & Pay.*, 139, *Rex vs. Compton*. 20 *Pick.*, 356, *Commonwealth vs. Tuck*. Again, the third count in this indictment charges a *felony*, whilst the act in question creates a *misdemeanor*, and this renders the indictment fatally defective under that act. 7 *Mass.*, 245, *Commonwealth vs. Newell*. 2 *Md. Rep.*, 376, *Black vs. The State*.

2nd. Following the hypothesis, that the indictment is under the act referred to, the question arises, does the act of 1852, ch. 63, apply, because these defects could have been taken advantage of by demurrer? This act of 1852, in our opinion, applies to *jury trials*, and has no application to *cases submitted to the court*, under the acts of 1809, ch. 144, and 1852, ch. 344, as was done in the present case. Upon such a submission, the facts of the case, the application of the law to those facts, and the defects in the indictment, were all questions within the power of the court, and it was the right of the accused that the court should in fact "decide upon the whole merits of the case." 2 *Md. Rep.*, 201, *Rawlings vs. The State*. The accused, in submitting to the court, virtually occupied the position of having *demurred* to the indictment, and were entitled to the benefit of every defect in it, as well as to the failure in the proof. This position is clear, not only from the language of the act of 1809, ch. 144, but is rendered more so by reference to the preceding legislation upon the subject. The previous laws of 1781, ch. 11; 1787, ch. 34 and 1793, ch. 57, sec. 19, *do not* authorise the court to decide upon any *question of fact*, but only upon the law of the case, whether it consisted in a defective indictment, or the application of the law to the facts; if the facts were controverted the intervention of a jury was necessary. A submission under these acts, admitted the facts alleged against the accused. The act of 1809, ch. 144, of which that of 1852, ch. 344, is, in effect, a repetition, for the first time authorised the court, under a submission, *to decide upon the whole merits of the case;* the issue of *guilty* or *not guilty* in *fact* was submitted. The previous laws are not *repealed* by these latter acts, but the authority of the court to

decide upon every *question of law* involved in the case, remains as before; the authority is *increased*, and the power to decide upon facts *added*. When a case was submitted to the court under the previous laws, could not the court, *without a demurrer*, have decided that the indictment was defective? that no offence known to the laws was charged? If so, the same authority is vested in them now, since those acts are still operative. The reason of the act will control its interpretation. The object to be accomplished by the acts of 1809, ch. 144, and 1852, ch. 344, was, doubtless, to save time and avoid delays in the administration of justice. Such, say the Court of Appeals, in *Cochrane vs. The State*, 6 *Md. Rep.*, 400, was the intention of the Legislature. In *jury trials*, the court has no power to pronounce upon the indictment, unless invoked by demurrer or by a proceeding *subsequent* to the verdict; the accused may be convicted and then move in arrest of judgment, for reasons which would have been equally decisive upon demurrer, and should the motion be sustained, he would be discharged, subject to another arrest and another indictment, and thus all the delays of a mis-trial be incurred without any power on the part of the court to interfere. The case is totally different under a *submission;* it is then surely competent for the court to arrest the proceedings at the threshold, to pronounce the indictment defective, in the same manner as if the question arose on demurrer. This the court could do before a single witness was examined, or in any state of the proceedings, and if this position be correct, the *reason* of the act of 1852, ch. 63, fails, and it cannot therefore, be applicable to cases submitted to the court; *ratio est animus legis.*

3rd. Consider the case without reference to the above positions, still a decisive objection is to be found in the fact, that the accused were indicted for *one* offence and convicted of *another*. The offence charged is a *felony*, and had the word *"house"* been used instead of the word *"building*,*"* the indictment would have *clearly* charged the crime of *arson*. Granting then that the act of 1852, ch. 63, is applicable to cases submitted, the court could have convicted the accused of the charge of *felony*, viz., *arson*, and have pronounced judg-

ment accordingly, and then the principles of the case of *Cochrane vs. The State*, 6 *Md. Rep.*, 400, would apply. Had the court convicted the parties of *the charge in the indictment*, it would have been too late to have moved in arrest, or sued out a writ of error. The court, however, did not find them guilty of the indictment, but of a *misdemeanor*, an offence totally different, and this is a fatal error, since it could not have been *anticipated* by demurrer. The indictment is for *felony*, the finding of the court dissects the indictment and convicts of a misdemeanor totally distinct. This cannot be done. *Arch. Cr. Pl.*, 106. 7 *Mass.*, 245, *Commonwealth vs. Newell.* 2 *Md. Rep.*, 376, *Black vs. The State.* 1 *Chitty's Cr. Law*, 252. 2 *Hawk. P. C.*, ch. 47, sec. 6. 2 *Strange*, 1133, *Rex vs. Westbeer.* *Whart. Cr. Law*, 196. 7 *Sergt. & Rawle*, 423, *Commonwealth vs. Gable.* 12 *Pick.*, 496, *Commonwealth vs. Roby.* A part of a count may doubtless be found, and the jury may convict of a minor offence, but it must be *included* in the charge, and a part of the offence stated. As in an indictment for murder, you may convict of manslaughter, for burglary and larceny, of the larceny, for highway robbery, of larceny, *because* manslaughter is included in murder, larceny in the burglary and larceny, and in the robbery. But it will not be contended, that the misdemeanor created by the act of 1809, ch. 138, is included in the crime of arson. This case is to be distinguished from that of *Cochrane vs. The State*. In that case the indictment charged a *felony*, and the verdict was guilty of the charge in the *indictment*. It was *not* a verdict of guilty of *one offence*, when the indictment charged *another*, but was guilty of the offence charged in the indictment, though *defectively* charged. Had the court in this case convicted the accused of feloniously, wilfully and unlawfully committing the offence charged in the third count of the indictment, it would be in the position of the case of *Cochrane vs. The State*, as the only reason which prevents the indictment, being a good indictment for *arson*, is apparent on its face, and therefore is such an omission as could have been availed of by demurrer. The court has, however, convicted the accused of an offence totally different from that

charged in the indictment, as distinct in legal contemplation as arson from larceny, of an offence of which they had not notice, and of which they were, as far as the record shows, in total ignorance. This surely cannot be done.

4th. But if this indictment can be regarded as containing all the essential requisites for an indictment for *arson*, as I am inclined to think it can, then it is clear the judgment must be reversed. For then, whether the parties were guilty or not, could only appear *upon proof*, and they could not possibly have *demurred*. There was no ground for a *demurrer*. And as the finding of the court shows that they were not guilty of *arson*, or indeed of any *felony*, the judgment for a *misdemeanor* was clearly erroneous.

No counsel appeared for the State.

ECCLESTON, J., delivered the opinion of this court.

The building alleged to have been burned is described as "a certain building used as a brewery for the manufacture of beer." And the indictment charges, that the traversers, "feloniously, wilfully and unlawfully, did set fire to" the building thus described; "and the same building, used as a brewery for the manufacture of beer as aforesaid, then and there, by such firing as aforesaid, feloniously, wilfully and unlawfully, did burn and consume, contrary to the act of Assembly in such case made and provided," &c.

There are three counts, all being similar, except stating different owners of the property.

At the instance of the traversers the case was tried by the court, upon the plea of not guilty, without a jury.

The record states: "Whereupon the court does say that it finds the prisoners guilty of the offence as charged in the third count of the indictment, except the court does not find them guilty of having 'feloniously' committed the offence, the court not deeming the offence felony in law. And the court further finds them not guilty on the first and second counts of said indictment." Upon this finding judgment was passed, by which George Kellenbeck was sentenced to undergo confinement in the penitentiary for seven years and two months, and Andrew Brash for six years and two months.

In claiming a reversal of this judgment, it has been argued by the traversers' counsel that the indictment contains a proper and sufficient statement of all that is essential in a case of *arson*. That whether the parties were or were not guilty of the charge, could not appear until the proof should be heard. And as it is evident, from the finding of the court, they did not commit the offence as charged, the court had no authority to pass judgment against them for a *misdemeanor*, under the second clause of the act of 1809, ch. 138, sec. 5. The traversers therefore claim the right to have the judgment reversed, and insist that the act of 1852, ch. 63, has no application to such a case as this. It prevents the reversal of a judgment, "for any matter or cause which might have been a subject of demurrer to the indictment." But here, as the indictment contains all that is necessary to make it valid in a case of arson, there was no ground for a demurrer which could have been used as a defence. And although the State failed to sustain the charge as laid by proof, that, surely, could not be cause of demurrer, and, consequently, the erroneous judgment ought to be corrected by means of the present writ of error.

It is unnecessary to inquire whether the conclusion of this argument is correct, conceding the premises on which it is based to be true, because there is an error in the premises, in a very important particular. The indictment is defective, viewing it as charging the crime of arson. The burning is no where alleged to have been done "*maliciously*," but "feloniously, wilfully and unlawfully."

In describing this offence it is said, in 1 *Hale's Pleas of the Crown*, 566: "The felony of arson, or wilful burning of houses, is described by my *Lord Coke, ch. 15, page* 66, to be the *malicious and voluntary burning of the house of another*, by night or by day." And again, on *page* 569, the same writer says: "It must be a *wilful and malicious* burning, otherwise it is not felony, but only a trespass." See, also, 3 *Chitty's Crim. Law, marginal page* 1104; 4 *Bl. Comm., marginal pages* 220, 222; 2 *Russell on Crimes*, 548, and 2 *East's Crown Law*, 1015.

In reference to how the offence should be charged, it is said,

in 2 *East's Crown Law, ch.* 21, *sec.* 11: "The indictment for arson at common law must lay the offence to have been done *wilfully* (or *voluntarily*) *and maliciously,* as well as *felonious-ly.*" The same language is used in *Wharton's Amer. Crim. Law,* 625, (*3rd Ed.*) And in 1 *Hale's Pleas of the Crown,* 567, *ch.* 49, we find it said: "In cases of wilful burning of houses the indictment runs, *Quod felonnice, voluntarie et ma-litiose combussit domum,* without saying *domum mansionalem,* as in case of burglary." See likewise the note on page 568, "as to the form of the indictment," especially that portion of the note in regard to the act being done "*maliciously.*" It also appears, in 3 *Chitty's Crim. Law,* 1107, "the terms *voluntary* (or *wilfully*) and *maliciously* are requisite." And on page 1109, this author gives the form of an indictment, in which it is said, "*feloniously, wilfully and maliciously* did set fire to, and the same house then and there, by such firing as aforesaid, *feloniously, wilfully and maliciously,* did burn and consume." *Russell, in his Treatise on Crimes,* 2nd Vol., 563, (*Ed. of* 1850,) says: "With respect to the indictment it may be observed, that it is clearly necessary in an indictment for arson at common law to lay the offence to have been done *wilfully* and *maliciously;* and though the words 'wilfully and maliciously' did not occur in the statute of 9*th Geo.* I., *ch.* 22, now repealed, yet they seem to have been considered as neces-sary in an indictment upon that statute."

From these authorities it is evident that the present indict-ment, as a charge of arson, is defective, and, consequently, might have been demurred to. Nor can it be considered a valid indictment for an offence under the 2nd clause in the 5th section of the act of 1809, ch. 138. Were it not liable to objection in any other respect, it is so for the reason that it fails to describe the building as "not parcel of any dwelling house." The language of the clause referred to is: "Every person, his or her aiders, abettors or counsellors, who shall be duly convicted of the crime of wilfully burning any mill, dis-tillery, manufactory, barn, meat-house, tobacco-house, stable, warehouse, or other out-house, not parcel of any dwelling house," &c. These latter words of exception or qualification

Kellenbeck & Brash, *vs.* The State.

in relation to the houses mentioned, constitute part of the description of the crime, and being included in the enacting portion of the statute, they should be used in the indictment. *Wharton's Amer. Crim. Law*, 191. *Rawlings vs. The State*, 2 *Md. Rep.*, 211, 212. And as those words are not contained in this indictment, there could have been no conviction under it, for the offence described in the clause of the statute now under consideration, if the parties charged had seen fit to have filed a demurrer.

Thus it appears that by a demurrer the traversers might have successfully defended themselves against this indictment, viewing it as a charge of either crime which has been mentioned. And this being true, the act of 1852 is applicable to the present case, notwithstanding, under the submission to the court, the judge was called on to decide the whole case, both in regard to law and fact.

The act is very comprehensive in its terms, and in the second section provides, that "no judgment upon any indictment for any felony or misdemeanor, or upon any presentment, whether after verdict, by confession, or otherwise, shall be stayed or reversed for," (sundry matters then enumerated,) "nor for any matter or cause which might have been a subject of demurrer to the indictment, inquisition or presentment, as the case may be."

Now, if finding the parties guilty, in the manner shown by the record, can be considered as a verdict, the judgment rendered thereon is within the act of 1852. But, if such finding is not a verdict, and the judgment is neither "after verdict or by confession," surely it must then be such a judgment as was designed to be provided for by the words, "or otherwise." And believing the indictment should have been held bad on demurrer, we think the case comes within the act under consideration; consequently the judgment cannot be reversed.

Although the act of 1852, in this instance, may prevent the reversal of a judgment not strictly legal, nevertheless, as the judge below found the parties guilty of burning the building, it is but just to presume the evidence authorised such finding, and, if so, the offenders will only meet that punishment which

the Legislature designed should be the consequence of such a crime.

As the act of 1852 prohibits a reversal of the judgment, because the parties might have prevented the judgment by demurrer on account of defects in the indictment, the writ of error must be quashed.

*Writ of error quashed.*