JOSEPH DAVIS *vs.* THE STATE OF MARYLAND.

*Sufficiency of the averments in an Indictment for Murder—Act of*
*1809, ch. 138; Art. 30 of the Code—Criminal Pleading—*
*Clerical Misprision—Second arraignment unnecessary—Docket*
*entries—When a Writ of Error will not lie—Practice in the*
*Court of Appeals.*

In an indictment for murder, it is not necessary to aver the circumstances which determine the degree, as defined by the Act of 1809, ch. 138, codified in Article 30 of the Code of Public General Laws.

The express object of the Act of 1809, ch. 138, codified in Article 30 of the Code of Public General Laws, in dividing the crime of murder into degrees, was the mitigation of the punishment in cases of the second degree; there was no design on the part of its framers to change the form of pleading.

When a person is indicted for murder in the technical language of the common law, he is charged with a crime which in its proper sense includes all circumstances of aggravation, and as all minor degrees are included in the major, he is liable to be convicted of the inferior as well as of the higher grades of that offence, and *vice versa*.

When a statute creates an offence, or increases the punishment of an offence, an indictment founded upon such offence, must aver the circumstances which constitute the offence or increase the punishment.

Davis *vs.* State.

A party was indicted for murder in the Circuit Court for Carroll County, was arraigned, pleaded not guilty, and was put upon his trial; the jury failing to agree were discharged, and at the suggestion of the prisoner, the record of proceedings was transmitted to the Circuit Court for Washington County. The transcipt of the record so transmitted stated that the grand jurors who found the presentment, were "good and lawful men of *Baltimore* County." All the proceedings prior and subsequent to this statement, were properly recorded as of *Carroll* County. HELD :

That the word "*Baltimore*" was a clerical misprision, which did not mislead or prejudice the prisoner, and could not affect the validity of the proceedings, or the verity of the record.

A party indicted for murder in the Circuit Court for Carroll County, was arraigned, pleaded not guilty and put himself on his country; a jury was impannelled and charged; and having failed to agree were discharged by the Court. On motion and affidavit of the prisoner, the cause was removed to Washington County for trial. HELD :

That as the prisoner had been arraigned and had pleaded in the Circuit Court for Carroll County, it was unnecessary to repeat the form in the Court to which he was removed.

The failure not to show by the docket entries all the facts which are extended at large on the record transmitted to the Court of Appeals, does not impair the validity of the record.

After a party indicted for murder has been tried, convicted and sentenced to be hung, his counsel by petition prayed that the record of the case might be removed as upon writ of error to the Court of Appeals, and designated the following, substantially, as points or questions of law, by the decision of which the prisoner felt himself aggrieved : First, that the indictment did not, with legal sufficiency, allege that the crime with which he was charged, was murder in the first degree under the Code of Public General Laws. Secondly, that the averments in the record showed that the Circuit Court had no jurisdiction. Thirdly, assuming that the indictment, verdict and judgment were good under Article 30, secs. 137 to 145 of the Code, then that such sections were unconstitutional and void. HELD :

1st. That a writ of error did not properly lie; the errors assigned were subjects of demurrer, or in arrest of judgment.

2nd. That it not appearing by the record that the points or questions so designated had been tried and decided by the Circuit Court, they could not be decided by the Court of Appeals.

Davis *vs.* State.

WRIT OF ERROR from the Circuit Court for Washington County.

The plaintiff in error was indicted in the Circuit Court for Carroll County in manner and form as follows:

"THE STATE OF MARYLAND,
*Carroll County, to wit:*

The grand jurors of the State of Maryland, for the body of Carroll County, do on their oaths present, that Joseph Davis, late of Carroll County aforesaid, yeoman, on the fifth day of April, in the year of our Lord one thousand eight hundred and seventy-two, with force and arms, at the County aforesaid, in and upon one Abraham L. Lynn, in the peace of God, and of the said State, then and there being, feloniously, wilfully, and of his malice aforethought, did make an assault, and that the said Joseph Davis, with a certain iron crowbar, in and about three feet in length and one inch in diameter, which he, the said Joseph Davis, then and there had and held in both of his hands, the said Abraham L. Lynn, in and upon the back part of the head of him, the said Abraham L. Lynn, then and there feloniously, wilfully, and of his malice aforethought, did strike, giving unto him, the said Abraham L. Lynn, then and there, with the said iron crowbar, by the stroke aforesaid, in manner aforesaid, in and upon the back part of the head of him, the said Abraham L. Lynn, one mortal wound, of the length of one-and-a-half inches, and of the width of one-and-a-quarter inches, and of the depth of one-eighth of an inch, of which said mortal wound, he, the said Abraham L. Lynn, on the said fifth day of April, in the year of our Lord, one thousand eight hundred and seventy-two, at the county aforesaid, did languish, and languishing, did live. On which same fifth day of April, in the year of our Lord one thousand eight hundred and seventy-two aforesaid, at the county aforesaid, he, the said Abraham L. Lynn, of the said mortal wound died.

And so the jurors aforesaid, upon their oaths aforesaid, do say that the said Joseph Davis, him, the said Abra-. ham L. Lynn, in manner and form aforesaid, and by the means aforesaid, feloniously, wilfully, and of his malice aforethought, did kill and murder, contrary to the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State."

The plaintiff in error so indicted, was arraigned, pleaded "not guilty," and put himself on his country ; a jury was impannelled and charged, and having failed to agree were discharged by the Court.   On the 8th of July, 1872, on the suggestion and affidavit of the plaintiff in error, the record of proceedings in the case was transmitted to the Circuit Court for Washington County, for trial.   A trial was accordingly had and the jury rendered a verdict of guilty of murder in the first degree.   Exceptions were taken to the rulings of the Court during the trial, and the plaintiff in error appealed to the Court of Appeals, who affirmed the rulings of the Circuit Court and re- manded the cause.   (*Vide* 38 *Md.*, 52.)   The Circuit Court thereupon on the 30th of July, 1873, passed sentence of death upon the prisoner.

On the 5th of January, 1874, the prisoner by petition, prayed that the record of the case might be removed as upon writ of error to the Court of Appeals, and desig- nated various points or questions of law, by the decision of which he deemed himself aggrieved.   These points are sufficiently presented in the opinion of the Court.   The application to remove the record, as upon writ of error, was allowed.

Subsequently, on the same day, the prisoner suggested as supplementary to his petition for the removal of the record, that the record of his trial in the Circuit Court for Washington County, as contained in the docket entries, minutes, records, &c., of said Court, was insuffi-

cient in law, as it did not show that at said trial he was arraigned or that he pleaded, or that a jury was sworn, or that at the time of passing sentence, he was asked why sentence should not be passed upon him ; upon these points he desired to obtain the decision of the Court of Appeals.

The cause was argued before BARTOL, C. J., BOWIE, GRASON and ROBINSON, J.

*Tryon Hughes Edwards* and *William P. Maulsby,* for the plaintiff in error.

Under the provisions of Article 30 of the Code of Public General Laws, no person can be guilty of murder in the first degree, and adjudged to death, unless the murder be perpetrated in some one or other of the ways mentioned. In this case the traverser is not charged by the indictment with murder by means of poison, or lying in wait, or in the perpetration of, or attempt to perpetrate arson, or in the burning, or attempt to burn a barn, tobacco-house, &c., &c., or in the perpetration of, or attempt to perpetrate rape, sodomy, mayhem, robbery, or burglary, or in arresting and imprisoning, or attempting to arrest and imprison any free person, &c., &c.

Is he charged by the indictment with a *wilful, deliberate and premeditated killing ?* 2 *Bishop on Criminal Procedure,* secs. 567, 568, 584 ; *Archbold's Cr. Pl.,* (17th Lond. Ed.,) 51, 52, 53, 60 ; 2 *Hale's Pleas of the Crown,* 170.

Where a statute divides a Common Law felony into grades or degrees, and affixes to each grade, or to the particular circumstances under which the offence may be committed, a higher and lower degree of punishment, the indictment must expressly charge the circumstances under which it alleges the crime to have been committed, and must state those circumstances with certainty and precision.

The greater or higher may include the lesser or lower. But not *e converso*. The lower grade cannot include the higher. Under an indictment charging the higher grade of the crime, a traverser may be convicted of a lower grade. But under an indictment charging the lower, he cannot be convicted of the higher grade. *Vide* 1 *Chitty's Cr. Law*, 227, 229 ; *State vs. Buchanan*, 5 *H. & J.*, 341 ; *State vs. Nutwell*, 1 *Gill*, 56 ; *Capritz vs. State*, 1 *Md.*, 569 ; *Weighorst vs. The State*, 7 *Md.*, 451 ; *Franklin vs. State*, 12 *Md.*, 236, 249.

The ingredient of murder in the first degree is that it shall be by some "kind of *wilful, deliberate and premeditated killing.*" Such are the words of the statute. *Code, Art.* 30, *sec.* 137. In the indictment in this case, the words are that the traverser in and upon, &c., *feloniously, wilfully and of his malice aforethought, &c.* The indictment does not aver a *deliberate and premeditated* killing.

"The words 'malice aforethought,' used to designate the intent by which the killing becomes murder, have, as the reader knows, a technical meaning, and they do not signify that the person killing meant to kill. On the other hand, the words 'deliberately, premeditated malice aforethought,' do include in their meaning, as the Courts all construe them, the intent to take life." *Bishop Cr. Pro.*, *sec.* 592.

This indictment, is in Common Law form, in the respect being considered. Our statute requires, in addition to malice prepense, express or implied, *deliberation and premeditation* in the killing.

The words of the Ohio statute are " that if any person shall *purposely, and of deliberate and premeditated malice,* * * * kill another, every such person shall be deemed guilty of murder in the first degree, and upon conviction thereof, shall suffer death."

It is held by the Supreme Court of Ohio that an indictment charging a killing, of deliberate and premeditated

malice, is insufficient, but that in addition it must aver that the killing was "*purposely*" to be sufficient. *Fouts vs. State*, 8 *Ohio St. Rep.*, 98 : *Robbins vs. State*, 8 *Ohio St. Rep.*, 131 ; *Hagan vs. State*, 10 *Ohio St. R.*, 459 ; *Loeffner vs. State*, 10 *Ohio St. Rep.*, 598.

There is no substantial difference between the Ohio statute and the Maryland statute, in the respect in question. Each adds to the Common Law ingredients of murder punishable with death, The one, *purpose and deliberation and premeditation.* The other, *deliberation and premeditation.* Whether, according to the words used by the Courts of one State to express the idea, the statute *created* the crime, or according to the words used by the Courts of the other for the same purpose, "the Act of Assembly does not create a new offence in distinguishing between murder of the first and second degree. The design was to discriminate in awarding the punishment," the result is the same. The idea is identical. In both forms of words is involved the legal ingredient in the act which is essential to authorize the punishment. That ingredient is prescribed by the statute affixing the punishment to the offence in which the ingredient is found. The Ohio Court says that unless that ingredient, as prescribed by the statute, be averred on the face of the indictment, the punishment affixed by the statute cannot be applied ; that the record is deficient in not showing a case, compounded according to legal requirements, in which the sentence, as for the highest grade of punishment, can be adjudged. The record will be inharmonious. The indictment does not *appenr* to justify and support the judgment. *Vide Fouts vs. The State*, 8 *Ohio St. Rep.*, 114.

At Common Law a killing, felonious, wilful, and of malice aforethought was murder, and punishable with death. By the law of Maryland, a killing felonious, wilful and of malice aforethought, is murder also, but

not punishable with death. At Common Law there was no such crime, or grade of crime, (the idea is the same, whatever words are used to express it) as murder in the first degree, and none such as murder in the second degree. In Maryland there is. The crime, or the grade of crime, was created by statute. It is not the same crime, or grade of crime, which was Common Law murder. The statute declares that no killing shall be murder in the first degree in this State, and punishable with death, as all murder was at the Common Law, unless it be wilful, *deliberate and premeditated,* or be of some one of the other enumerated classes. All other kinds of murder shall be murder in the second degree, and punishable by imprisonment; under this head is embraced Common Law murder, or killing wilfully, feloniously and of malice aforethought.

All such is punishable by imprisonment, and may not be punished with death. An indictment, in Common Law form, and embracing the allegations of facts required by the Common Law, is a good indictment for murder in the second degree in Maryland, "all other kinds of murder" being in the second degree, by force of our statute. An indictment for murder in the first degree, as created by our statute, whether it be called crime or grade, must contain an averment of all the facts which the statute requires to constitute murder in the first degree. Those facts are, so far as this case is concerned, that the killing shall be wilful, *deliberate and premeditated.* Deliberation and premeditation are just as much facts as the giving the mortal wound, or any other fact in the case. Unless those facts are proved, the defendant cannot be adjudged to die. They cannot be proved, unless they are alleged. That would be in violation of every rule of pleading, and of evidence. By sec. 147 of Art. 30, the jury shall ascertain by their verdict whether the murder be in the first degree or the second

degree. The jury cannot be allowed, by the fixed rules and principles of pleading, to find that a killing was wilful *deliberate and premeditated*, unless those facts are averred in the indictment. The indictment in this case was not demurrable. It was a good indictment, under which it was competent to find the party guilty of murder in the second degree, and to punish him by imprisonment. But it was not competent, under this indictment, to find a party guilty of murder in the first degree, and punish him with death, because the indictment did not aver a deliberate and premeditated killing, which only is murder in the first degree under the statute and punishable with death. The true *construction* of the statute must be that on an indictment for murder in the first degree, that is, an indictment averring a wilful, deliberate and premeditated killing, the jury may find a verdict of guilty of murder in the second degree; and so to harmonize the *statute with the Common Law rule, that the lesser is* included in the greater charge.

It cannot be a true construction that on an indictment averring a killing, wilful, felonious, and of malice aforethought, a party can be convicted of a deliberate and premeditated killing, because it does not allege deliberation and premeditation, facts made necessary by the statute to constitute the crime or grade of murder in the first degree, and because such a construction would be in violation of every rule and principle of criminal pleading, and in violation af all established rules of construction. 2 *Bishop's Crim. Procd.*, 3d *part of ch.* 37, *secs.* 562–597.

The record must be perfect on its face—it must set forth the crime, with all its elements, to which the law affixes the judgment to be pronounced by the Court—matter extrinsic the *record* cannot aid in supporting the judgment—"the Courts are to judge upon the record itself, that their successors may know the grounds of their

judgment." 2 *Tidd's Prac.*, 918. If the record set forth a charge of murder in the second degree, sentence of death cannot be adjudged unless the law affixes that judgment to murder in the second degree. A verdict fixing a higher grade than that charged, cannot aid the judgment or sentence, and enable a higher grade of punishment to be adjudged, because the record would be inharmonious, the indictment being for one crime or grade of crime, and the verdict being for another; and the result would be that, by construction of sections 143 and 137 together, to authorize a judgment of death, it must be determined that allegations in pleading are superseded by the statute, and that a party may be punished for a crime, or grade of crime, with which he is not charged by the indictment, for the reason that a statute, construed by the Court to that end, so provides. Without such a construction, the Court cannot "judge upon the record itself," if when it looks to the record for a foundation of its judgment of death, it finds an indictment which does not authorize the judgment. See *Smith vs. State,* 6 *Gill,* 425, 429; *Rawlings vs. State,* 2 *Md.,* 201; *Black vs. State,* 2 *Md.,* 376; *Cochrane vs. State,* 6 *Md.,* 400; *State vs. Sutton,* 4 *Gill,* 494; *Potter's Dwarris on Stat.,* 185.

If the Maryland statute be so construed as that, under it, a party may be convicted of a *deliberate and premeditated killing,* and so of murder in the first degree, on an indictment which does not aver a *deliberate and premeditated* killing, made by the statute necessary ingredients of murder in the first degree, then that statute is in violation of the 21st Article of the Declaration of Rights which declares "that in all criminal prosecutions every man hath a right to be informed of the accusation against him; to have a copy of the indictment or charge in due time, (if required,) to prepare for his defence, &c."

An accusation of a killing, feloniously, wilfully, and of malice aforethought, is not an accusation of "any kind

of wilful, deliberate, and premeditated killing." The record shews that the traverser hath not been informed of an accusation against him of wilful, deliberate and premeditated killing, and has not had an indictment averring that crime, or the facts requisite to constitute that crime, or grade of crime. It is also repugnant to Art. 5, Declaration of Rights. It is also, so construed, in violation of Article 6, Amendments to the Constitution of the United States.

The indictment in this case, although good for the crime, which it covers by its averments, *i. e* , murder at Common Law, which belongs to the class of " all other kinds of murder" mentioned in sec. 142 of Art. 30, and not to the class mentioned in sec. 137, is insufficient to sustain a judgment of death, as for a wilful, deliberate and premeditated killing, not only for want of an averment, that the assault was made with deliberation and premeditation, but also for want of an averment, that the killing set forth in the indictment was *intended*, *i. e.*, was wilful, and with deliberation and premeditation. *Kain vs. State*, 8 *Ohio St. R.*, 306; *Fouts vs. State*, 8 *Ohio St. Rep.*, 98–122; *Johnson vs. Commonwealth*, 24 *Penn. St. R.*, 386.

The record in this case sets forth, that the persons named as grand jurors came from Baltimore county. This was not a subject for demurrer, not appearing on the face of the indictment. It is matter extrinsic the presentment and indictment, but appearing on the face of the record transmitted to this Court. "The Courts are to judge upon the record itself, that their successors may know the grounds of their judgment." 2 *Tidd's Pr.*, 918; *Fitzgerald vs. The State*, 4 *Wisconsin*, 395; *Clark vs. State*, 1 *Ind.*, 161; *Thomas vs. The State*, 5 *How.*, (*Miss.*,) 31; *Abram vs. The State*, 25 *Miss.*, 591.

The Court below was without jurisdiction to adjudge the party to death. There was no indictment for a crime

or grade of crime, to which the law affixed the penalty of death. At Common Law the Court had jurisdiction to sentence to death in all kinds of murder. Not so under the Maryland statute. Its jurisdiction to adjudge death is limited to the kind of murder enumerated in sections 137, 138, 139, 140 and 141, of Art. 30 of the Code, or, so far as concerns this case, to murder by *wilful, deliberate and premeditated killing.* See *Hamilton vs. Whitridge, et al.*, 11 *Md.*, 128.

A writ of error is the proper remedy. Until the sentence was actually pronounced, it could not appear from the record that the judgment was to be pronounced, and a motion to arrest that judgment could not be interposed. It did appear that a verdict had been rendered, but it did also appear that the verdict was unauthorized by the indictment, and it did not appear that the Court would enter a judgment such as the verdict pointed to, or that it would not enter a judgment on the record—*i. e.*, a judgment for the crime set forth in the indictment. 1 *Salkeld*, 77; 2 *Tidd's Prac.*, 918; 1 *Ld. Raymond*, 232.

A writ of error lies whether or not a motion in arrest might have been made in the Court below. 2 *Tidd's Prac.*, 1134; 2 *Williams' Saunders*, 296, (*Lond. Ed.*, 1871); *Clare vs. The State*, 30 *Md.*, 171; *Ford vs. The State*, 12 *Md.*, 547.

Neither the Constitution in authorizing, nor this Court in providing by its rules for a dispensation with the form of a writ of error, intended to abolish the substance and effect of that writ. Writs of error in criminal cases, stand, as at Common Law, unimpaired and unaffected by legislation, except to dispense with their form. See *Manly vs. State*, 7 *Md.*, 145; *Watkins vs. State*, 14 *Md.*, 412, 422, 424; *Hall, et al. vs. State*, 12 *G. & J.*, 334.

The record does not show that the traverser was arraigned and pleaded in the Circuit Court for Washington County. *Price vs. State*, 8 *Gill*, 295, 313; *Douglass vs. The State*, 3 *Wisconsin*, 820.

The docket entries do not show that before sentence passed the traverser was asked why sentence should not be passed, or if he had anything to say, why sentence should not be passed, or anything to that effect.    1 *Bishop on Crim. Pro., sec.* 865, *and cases referred to.*

· *Attorney General Syester*, for the State.

The writ of error in this case should be quashed.

1st. Because the Act of 1825, ch. 117, codified in Art. 5, sec. 12 of the Code, distinctly declares, that this Court shall, "in *no case*, decide any point or question which does not appear by the record to have been raised or made in and decided by the Court below." That provision of the Code and the first rule of this Court, made in pursuance of sec. 18, Art. 4 of the Constitution, do most fully and conclusively show that the writ should be quashed.

There is not the slightest pretence that *any one of the* numerous errors assigned by the plaintiff in error was ever in any manner whatsoever presented to the Circuit Court.    There is not in the petition one single solitary *point* or *question* of *law*, by the *decision* of *which*, in the Court below, the plaintiff in error could have felt himself aggrieved, because no question or point of law was ever raised, made or decided by the Circuit Court.

2nd. Five of these errors are to the substance of the indictment.    It is said, that there are not *sufficient averments* therein to sustain the judgment in the case.    If it were possible to conceive what rule of criminal pleading requires the averments, said to be omitted, in the 1st, 2nd, 3rd, 4th and 5th errors assigned as essential averments in an indictment for murder, it is incredible to suppose that this Court can or will regard such omissions to be fatal, and reverse the judgment in this case.

For conceding such omissions to be fatal on demurrer, no demurrer was interposed to the indictment; and unless sec. 82 of Art. 30, of the Code, has been repealed, or is

*unconstitutional*, the judgment cannot and will not be reversed for those errors.

Sec. 82 of Art. 30, is a codification of the Act of 1852, ch. 63, and the following cases, expounding and applying that Act, are conclusive on this point : *Cochrane vs. State*, 6 *Md.*, 400 ; *State vs. Phelps*, 9 *Md.*, 21 ; *Kellenbeck vs. State*, 10 *Md.*, 431 ; *Cowman vs. State*, 12 *Md.*, 250 ; *Wedge vs. State*, 12 *Md.*, 232 ; *State vs. Reed*, 12 *Md.*, 263.

But the indictment itself is not open to these objections, even on demurrer. It is in the very language of the common law form, and it was never before supposed that the Act of 1809, ch. 138, or sec. 137 of Art. 30, of the Code, *defined the* crime of murder, and it thereby became necessary to employ any of the words of the statute or the Code, to describe the offence.

In the case of *Weighorst vs. State*, 7 *Md.*, 451, the contrary is distinctly declared. The Act and the Code simply distinguish between murder in the first and second degree. "The design was to discriminate in awarding punishment."

Under an indictment for murder at *common law*, a verdict will be sustained for murder in the first or second degree, at the discretion of the jury. And it is neither usual *nor safe* to specify or discriminate the degrees of an indictment. It has hitherto been believed that an indictment of murder was good in the common law form, and under it a jury could find either degree. But as this long settled doctrine is now assailed, the following adjudged cases may be relied on, not only in support of the doctrine itself, but as reflecting in *some degree* on the question, whether or not the Act of 1809, ch. 138, secs. 9, 3 and 4, and sec. 137 of Art. 30, of the Code, are *constitutional. Weighorst vs. State*, 7 *Md.*, 442 ; *Ford vs. State*, 12 *Md.*, 514 ; *Watkins vs. State*, 14 *Md.*, 421 ; *Com. vs. Miller*, 1 *Va. Cases*, 310 ; *Wicks vs. The Common.*, 2 *Va.*

*Cases*, 387 ; *Mitchell vs. State*, 5 *Yerger*, 340 ; *White vs. Commonwealth*, 6 *Binney*, 183 ; *Hines vs. State*, 8 *Hump.*, 597 ; *McGee vs. State*, 8 *Missouri*, 495 ; *Whart. L. Hom.*, 387 ; *State vs. Verrill*, 54 *Maine*, 408 ; *Gehrke vs. The State*, 13 *Texas*, 568 ; *Livingston vs. The Commonwealth*, 14 *Grattan*, 592.

There remains but one possible consideration in connection with this branch of the case. The indictment itself, is free from all objections. The verdict is for murder in the first degree, and the sentence of the Court is in precise conformity with the law. No penalty or pain other than that prescribed by law, is added to the sentence ; it is the *only sentence* prescribed by the law. There can be no error in this connection, unless it consist in the verdict itself. If that verdict was right, then the sentence was right, and there is no ground here for complaint.

Authorities already cited fully sustain the verdict in such a case. In *Ford's Case* this Court reversed the judgment below, because the jury did not indicate the degree of murder in their verdict, and it is very plain, that had that verdict been as this, for murder in the first degree, there would have been no reversal. Now we are told there is error because the very thing *not done* in *Ford's Case*, has been done here.

But it is said the presentment and indictment were found by men of *Baltimore* County—this point was not raised or made in the Court below, and should not be considered here ; but if considered, it was too late after the plea of not guilty, to rely on such an objection, without first withdrawing the plea. 1 *Chitty's Plead.*, 309 ; 1 *Bishop on Crim. Procd.*, secs. 739, 383, 384 ; *Clare vs. The State*, 30 *Md.*, 163.

And whether a plea in abatement is the *only* mode. of reaching the objection, matters not, because by whatever mode it may be reached, it is in the nature of abatement,

.it does not go to the merits; it is dilatory in character. And a plea to the merits is a waiver of the objection.

3rd. Each and all the questions and points assigned as error in this record, were open to the plaintiff in error as well in the former appeal as in this. The record has undergone no change. No new proceeding has raised or made any new question or point of law. The record is now precisely as it was when the first appeal was brought here. And each and all of the alleged errors could have been availed of then, if they can be relied on here.

They should have been presented then, and cannot now be heard. A party will not be allowed to split up his case, and raise part of his objections at one time, and take up another part thereafter. A party appealing, must present and rely on each and every ground of complaint which the proceedings or record furnish; and a second appeal will not be entertained in the same case, unless in respect to some *new question or point of law,* arising out of some *proceeding subsequent to the first appeal.* Such a practice would be oppressive, would open the door to vexations, and intolerable delays; and considerations of public policy, have led the Courts distinctly and emphatically to forbid it. *Bridendolph vs. Zeller's Execs.,* 3 *Md.,* 325, and 5 *Md.,* 58.

Bowie, J. delivered the opinion of the Court.

The errors assigned as grounds for the reversal of the judgment below, by the plaintiff in error in this case, may be classified as follows:

First. Omissions of material averments in the indictment, necessary to show that the crime with which he was charged was murder in the first degree under the Code of Pub. General Laws.

Secondly. Averments in the record showing the Court below had no jurisdiction.

Thirdly. Assuming the indictment, verdict and judgment, are held to be good under Art. 30, secs. 137 to 145,

Davis *vs.* State.

of the Code of Public General Laws, then those sections are unconstitutional and void.

There are five specific objections to the form of the indictment.

1st. The indictment does not, with legal sufficiency, allege any kind of wilful, deliberate and premeditated killing, which is murder in the first degree under the law of the State of Maryland.

2d. The indictment does not allege that the killing set forth therein, was wilful, deliberate and premeditated.

3d. The indictment does not allege, in the description of the offence therein contained, that the killing alleged was wilful, deliberate and premeditated.

4th. The indictment does not allege that the blow in said indictment set forth, whereby a mortal wound is alleged to have been inflicted, was struck wilfully, deliberately and premeditatedly.

5th. The indictment does not allege that said blow was struck wilfully, deliberately, and premeditatedly, with a design thereby to produce death.

These are all based on the same premises, and may be reduced to one, viz., that the indictment does not charge the plaintiff in error, with the crime of murder in the first degree, as defined by the Code of Pub. Gen. Laws, and therefore the jury could not convict him of such crime.

These objections are said to be founded on the first principles of the common law, which require, that in an indictment, all the facts and circumstances constituting the offence, must be specially set forth. If any fact or circumstance, which is a necessary ingredient of the offence be omitted, such omission vitiates the indictment; and not only must the facts and circumstances which constitute the offence be stated, but they must be stated with such certainty and precision, that the defendant may be enabled to judge whether they constitute an indictable

offence or not, in order that he may demur or plead to the indictment, and that there may be no doubt as to the judgment which should be given, if the defendant be convicted.

These cardinal rules, the plaintiff in error contends have been violated in this case, because, since, the Code, Art. 30, sec. 137, declares "all murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and premeditated killing, shall be murder in the first degree," and by sec. 142, declares "all other kinds of murder shall be deemed murder in the second degree:"—the principles of the common law and of natural reason and justice, which are inherent in the case, require the indictment for murder, where the statute divides it *into two degrees*, should, if murder in the first degree is meant to be proved against the prisoner, contain those allegations, which show the offence to be in this degree.

This proposition is not supported by any well considered authority that has been cited, but seems to us opposed to the axioms of criminal pleading announced by the most esteemed writers on English Criminal Law, and modern American authors, with one or two exceptions.

"An indictment grounded upon an offence made by Act of Parliament, must by express words bring the offence within the substantive description made in the Act of Parliament, and those circumstances mentioned in the statute to make up the offence, shall not be supplied by the general conclusion ' *contra formam statuti.*' "

And so it is, if an Act of Parliament oust clergy in certain cases, as murder " *ex malitia precogitata,*" etc., * * though the offences themselves were at common law within clergy, they shall not be ousted of clergy, though convicted, unless these circumstances " *ex malitia preco-gitata,*" etc., be expressed in the indictment. 2 *Hale's Pleas of the Crown,* 170. The reason of these rules is

apparent on their face; in the one case, the crime is created by statute, in the other, the punishment is increased.

If the circumstances which constituted the crime, or increased the punishment, were not set out in the indictment, the accused would not be informed of the offence with which he was charged, or of the penalty to which he was liable. These reasons do not apply to a statute, neither creating an offence nor enhancing its penalties, but dividing a common law offence into degrees and diminishing the punishment. The essential elements of all felonies at common law, such as murder, arson and robbery, have been ascertained and defined by innumerable decisions, and are expressed with legal certainty by certain technical terms, which have been engrafted upon our jurisprudence for centuries.

These terms are incorporated into our language as expressing "*per se*" the crime they designate, and when used in our statutes, have a legal meaning when not otherwise qualified. 1 *Whar. Cr. L.*, 930. Thus, the Act of 1809, ch. 138, entitled, "An Act concerning crimes and punishments," codified in Art. 30 of the Code of Public General Laws, adopts the nomenclature of the common law for the catalogue of crimes enumerated therein, without attempting to define what constitutes those crimes.

In the preamble of the Act it is recited, "and whereas the several offences which are included under the general denomination of murder, differ so greatly from each other in the degree of their atrociousness, that it is unjust to involve them in the same punishment, Be it enacted, that all murder which shall be perpetrated by means of poison or by lying in wait, or by any kind of wilful, deliberate and premeditated killing, etc., shall be deemed murder of the first degree ; and all other kind of murder shall be deemed murder of the second degree ; and the jury before whom any person indicted for murder shall be tried, shall,

if they find such person guilty thereof, ascertain in their verdict whether it be murder in the first or second degree; but if such person be convicted by confession, the Court shall proceed by examination of witnesses to determine the degree of the crime, and to give sentence accordingly."

"Murder" is here recognized as a general denomination, including offences differing from each other in their degrees of atrocity, but not in their nature or kind; no attempt is made to explain or modify its meaning or abridge its range. Its common law sense is left unimpaired; the measure of punishment only is sought to be graduated according to the circumstances under which it was committed.

The mode of distinguishing its degrees is specially prescribed, by requiring the jury, if the person indicted for murder shall be *tried*, to "ascertain in *their verdict* whether it be murder in the first or second degree," or if the "person be convicted by confession, the Court shall proceed by examination of witnesses to determine the degree of the crime and to give sentence accordingly." This Act of Assembly, now codified, does not create a new crime; it neither adds to nor diminishes the class of cases which constituted murder at common law; nor does it increase the punishment.

When, therefore, a person is indicted for murder, in the technical language of the common law, he is charged with a crime, which in its proper sense, includes all circumstances of aggravation, and as all minor degrees are included in the major, he is liable to be convicted of the inferior, as well as of the higher grades of that offence, and *vice versa*.

The accused is advertised by the indictment for murder, that he is to be tried for a capital offence, and no language can convey more certain and precise information of the nature of the offence, than that employed by the forms of the common law, as uniformly interpreted.

The description of the crime by its general designation does not render uncertain that which was before certain, so as to throw the prisoner off his guard, or deprive him of any defence.   On the contrary it tends to his security, by preparing him for the worst, as " to be fore-warned is to be fore-armed."

The express object of the statute in dividing the crime into degrees, was the mitigation of the punishment in cases of the second degree.

The mode prescribed by the Code to ascertain the degree, shows beyond all doubt there was no design in the framers of the law to change the form of pleading.

If, as argued by the counsel for the plaintiff in error, the circumstances which determined the degree should be averred in the indictment, then a general verdict of guilty in the case of the trial, or a general plea of guilty, in case of confession, would have established the degree and determined the punishment; but the provisions of the Code, that the jury in the former case, "shall, if they find such person guilty thereof, ascertain in their verdict, whether it be murder in the first or second degree," or in the latter, that the Court shall proceed by examination of witnesses to determine the degree, shew the degree of murder depended on the proof, and not on the pleading.   On any other hypothesis the provisions of the Code in that respect, are unmeaning and useless.

The construction of those sections of the Act of 1809, ch. 138, relating to the degrees of murder, by this Court, in the case of *Weighorst vs. The State,* 7 *Md.,* 442, although not directly upon the point, confirms the view we have already expressed.   The prisoner was indicted for the murder of his wife, and found guilty of murder in the second degree, without acquitting him of murder in the first degree, or manslaughter.   A motion was made in arrest of judgment, on the ground that the jury had not passed on all the issues in the cause; in other

words, that the verdict did not cover all that was involved in the issue. The counsel for the plaintiff in error contended that the Act of 1809, ch. 138, speaks of murder in the *first* degree, and of murder in the *second* degree, as separate and distinct offences; that manslaughter, murder in the second degree, and murder in the first degree, are all degrees of homicide. In every such indictment, therefore, *homicide* is the subject charged, and murder in the first degree, or murder in the second degree, or manslaughter, is the result. Every such indictment, therefore, presents to the jury, three separate issues.

On the other hand, the State contended that the Act of 1809, ch. 138, sec. 3, does not alter the crime of murder as it is known at the common law, referring to *State vs. Dowd*, 19 *Conn.*, 391.

This Court taking up this point (by TUCK, J.) remarked: "The motion in arrest of judgment, is founded on the supposition, that the verdict should have acquitted the party of murder in the first degree, and of manslaughter; but we do not understand the latter feature of this motion to be relied on. Where there is but one count, the inferior grade of the offence need not be passed upon by the jury. It is sufficient if the finding cover the indictment, and we agree that the present case must be decided according to this rule. Weighorst was indicted for the crime of murder, not for having committed a homicide. Upon this charge he was convicted, and the jury, in obedience to the Act of 1809, ch. 138, ascertained the degree of that crime. This verdict, though not subjecting him to the severest penalty, found him guilty of murder, the crime alleged against him. The Act of Assembly does not create a new offence in distinguishing between murder, of the first and second degree. The design was to discriminate in awarding the punishment. The supposed analogy between a conviction of manslaughter and of

murder in the second degree does not exist. Manslaughter is a different crime from murder. Although both are within the general term homicide, yet, legally speaking, they are not different degrees of the same offence, because one is not murder at all, and hence, a verdict merely convicting the accused of that grade of homicide, would leave the crime charged in the indictment, wholly unnoticed, in disregard of the nature and end of pleading, and of the duty of the jury to pass upon the issues as framed. Besides, if the Act of Assembly created a new offence, it would be necessary, where a party is convicted of manslaughter, under a count for murder, to acquit of *both* degrees of murder, but this is never done."

"It is sufficient in such cases to say, not guilty of the murder, without negativing each degree of that crime. Again, the *Act does not authorize the accused to plead guilty of murder in the second degree.* If he confesses at all, he must plead to the indictment for murder, and it is then made the duty of the Court 'by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly.' It is true the Act does, in awarding punishment, speak of the crime of murder in the second degree, as if creating an offence before unknown to our laws; but we think this single expression, must yield to the object and design of the Act as indicated by its other sections."

To this lucid exposition of the Act of 1809, ch. 138, and its effect upon the forms of pleading in criminal cases, may be added the opinion of the Supreme Court of Pennsylvania, delivered by TILGHMAN, C. J., in the case of *White vs. The Commonwealth*, brought upon a writ of error. Among the errors assigned, it was objected to the indictment that the offence was not charged with sufficient certainty, and that it did not conclude "against the form of the Act of Assembly."

The question presented was not directly in the form of the objections now before us, yet, the same principles of

construction were involved, and to arrive at the conclusion announced in that case, as in Weighorst's it was necessary to determine the effect of the statute of Pennsylvania, which in respect to the crime of murder is almost identical with ours on the frame of the indictment. After stating the substance of the indictment, the learned Judge proceeds; "Where a statute *creates* an offence the indictment must charge it as being done against the form of the statute. But where the statute only inflicts a penalty upon that which was an offence before, it need not be laid to be against the form of the statute, because in truth, the offence does not violate the statute. That this is the rule, was decided in the case of the *Commonwealth vs. Searle*, 2 *Binney*, 339. The only question then will be, was murder of the first degree an offence *created* by Act of Assembly? This depends on the second section of the Act "for the better preventing of crimes" passed 22d April, 1794. * * * *

"Now this Act does not define the crime of murder, but refers to it as a known offence; nor so far as concerns murder in the first degree, does it alter the punishment, which was always death. All that it does, is to define the different kinds of murder, which shall be ranked in different degrees, and be subject to different punishments. It has not been the practice since the passing of this law, to alter the form of indictments for murder in any respect; and it plainly appears by the Act itself, that it was not supposed any alteration would be made. It seems taken for granted, that it would not always appear on the face of the indictment, of what degree the murder was, because *the jury are to ascertain the degree* by their verdict, or in case of confession, the Court are to ascertain it by examination of witnesses. *But if the indictments were so drawn as plainly to show that the murder was of the first or second degree, all that the jury need do, would be to find the prisoner guilty in manner and form as he stands*

*indicted.* In the case of the *Commonwealth vs. Joyce &
Mathias,* (*Oyer & Terminer, Phila., Feb'y,* 1808, before
C. J. TILGHMAN and Judge SMITH), who were convicted of
the murder of Sarah Cross, it was moved in arrest of judg-
ment, because the indictment did not charge the murder
to have been committed by a *wilful, deliberate* and *pre-
meditated killing,* as expressed in the Act of Assembly.
But the motion was overruled, and the murderers ex-
ecuted. I am therefore of opinion that the indictment is
good." 6 *Binney,* 182, 183.

The decision of the Supreme Court of Ohio, in the case
of *Dick vs. The State,* 3 *Ohio,* 89, is supposed to be in con-
flict with 6 *Binney,* and the principles there maintained;
and it is argued that this Court, in its decision in the case
of *Ford vs. The State,* 12 *Md.,* 514, approved of the de-
cision of the former, and dissented from, or disapproved
of the decision of C. J. TILGHMAN.

There was no ground of collision in the cases referred
to. The case in *Binney,* was that of an indictment, at
common law, for murder, and the question in brief, was,
whether the statute of Pennsylvania required a change
in the form of the indictment.

The case in 3 *Ohio,* was an indictment for murder, con-
taining three counts, each of which charged the crime of
murder in the first degree in the language of the statute.

In the course of C. J. TILGHMAN's opinion, to enforce
his argument, that the law of Pennsylvania contem-
plated no averment of the degree of the crime, he said if
so, the jury instead of finding the degree of the murder,
might find guilty in manner and form as he stands
charged, and the indictment would determine the degree,
and the law thus be gratified. To this argument, and
the cases cited to sustain it, Judge BARTLEY replies; they
rest upon the ground that the statute of Pennsylvania
does not define murder, but refers to it as a known offence
existing at common law. "The ground upon which

these decisions were made does not exist in Ohio, and therefore they can have no application here.'' He then adds, ''A doctrine contrary to that which appears to have prevailed in Pennsylvania, has been held in a number of the other States.''

The controversy was in fact, as to the mode of finding the verdict, not the sufficiency of the *allegata*.

In Ford's case, where the insufficiency of the verdict as rendered, was the subject of discussion, the counsel of the State, commenting on 6*th Binney*, which was cited by the counsel for the plaintiff in error to sustain the verdict, spoke of Tilghman's argument as ''*obiter dictum*,'' to which this Court replied, ''The case in which the distinguished Chief Justice dropped the dictum relied upon, did not involve the question, nor call for his opinion on the subject; and were it what counsel suppose it to be etc., we would not feel ourselves bound to conform to it. Nor, indeed, had it been directly raised in the case, could we, with our understanding of the language of the statute unite in such construction. But the fact is, we do not concur with the counsel for the State, in the interpretation placed by them on the language of C. J. Tilghman. His language is not susceptible of such construction. He alluded to an indictment under the statute, and not at common law.

The general doctrine of 6*th Binney*, was not in our opinion at all impeached by this Court in Ford's case.

The States of Maine, New Hampshire, New York, New Jersey, Virginia and Pennsylvania and others, have enacted laws, distinguishing murder at common law, by degrees.

''In Ohio, there are no crimes or misdemeanors at common law, they have a statute which defines murder with great precision and certainty, which is cited by Wharton in his treatise on Common Law, (page 510, 3d Ed.,) as an illustration of the essential difference

between statutory murder, and murder at common law."
*Fouts vs. The State,* 8 *Ohio,* 111.

Upon a review of these statutes in the States first mentioned, and the decisions thereon, Wharton announces, that "it is not necessary, nor is it the practice to designate the grade of the homicide in the indictment, nor that the killing should be charged to be wilful, deliberate and premeditated," etc. *Wharton's Crim. Law, sec.* 1115, (*5th Ed.*)

The case of *Johnson vs. The Commonwealth,* 24 *Pa. State Reps.,* 387, has been pressed upon our attention by the counsel for the plaintiff in error, as in conflict with the decisions of this State, on the construction of similar or identical language used in the several States, in connection with the form of the verdict. As we understand the ruling in this case, it decides where the indictment does not specifically charge murder in the first degree, but facts which constitute murder at common law, and *the jury fail to find in the verdict,* the *degree of the crime,* but find the prisoner "guilty in manner and form as he stands indicted," the indictment being broad enough to cover both degrees, the Court in deference to the principle of construction "*in mitiori sensu,*" and the language of the statute, describing murder in the first degree, will hold the finding to be murder in the second degree.

Whether this ruling, is consistent or not in all respects, with what has fallen from this Court in Ford's case, it is unnecessary to decide; the case itself is wholly unlike that now before us, in which the jury have not failed to ascertain the degree of the crime, of which the plaintiff in error was found guilty.

The province of the Court is, "*non dare sed dicere legem.*" Whatever our opinion might be of the correctness of the construction adopted by the Courts, as to the effect of these statutes, upon the forms of pleading

and procedure in criminal cases, if the question were "*res integra*," regarding certainty and uniformity in the interpretation of the law, as one of the chief securities of life, liberty and property, we feel bound to bow to the weight of authority and precedent.

The objection to the record, preliminary to the indictment is, that it sets forth that the persons named as grand jurors, were of "*Baltimore County.*"

The transcript of the record, transmitted from the Circuit Court for Carroll County to Washington County, at the instance of the plaintiff in error for trial, after the usual caption prefixed to such record showing, the State, County, style of the Court, Judges and officers, recites:

" Among other were the following proceedings, to wit :

THE STATE OF MARYLAND *vs.* JOSEPH DAVIS. Be it remembered, that Charles W. Hood, etc., good and lawful men of *Baltimore County*, who being then and there empannelled, sworn and charged to inquire for the State of Maryland, for the body of Carroll County, having withdrawn from the bar of the Court here, afterwards return and present to the Court here, a presentment in form following."

The presentment, entitled, as of Carroll County, by the Grand Jurors of the State of Maryland, for the body of Carroll County, of Joseph Davis, for the murder of Abraham L. Lynn, at Carroll County, aforesaid, follows; whereupon at the same term, the prisoner was arrested upon bench warrant, indicted, arraigned, pleaded not guilty, etc. This description of the County, in the preamble of the proceedings of the Court, whether regarded as matter of recital or averment, must be taken in connection with all other parts of the record and construed accordingly.

Although nothing can be averred contrary to the record, yet the record must be taken as a whole, to ascer-

tain what is averred. The Courts are bound to notice judicially the qualifications of Grand Jurors and what averments are consistent with law, and what are legally impossible.

The venue being Carroll County; the Court, the Circuit Court for Carroll County, it was legally impossible that good and lawful men of Baltimore County could be then and there impannelled, sworn and charged to enquire as grand jurors for the State of Maryland, for the body of Carroll County.

All the proceedings, prior and subsequent, being recorded as of Carroll County, it is obvious the word "Baltimore" was a clerical misprision, which did not mislead or prejudice the prisoner, and could not affect the validity of the proceedings or the verity of the record:—there being no pretence that the grand jurors were not citizens of Carroll County.

If the fact had been otherwise, the prisoner should have pleaded in abatement. *Clare vs. The State,* 30 *Md.,* 177 ; 1 *Chitty Pl.,* 309.

It is also objected that the record shows neither arraignment nor plea on the part of the plaintiff in error, in Washington County. The record consists of the transcript of the proceedings in the Circuit Court for Carroll County, where the prosecution commenced, and the transcript of the proceedings in the Circuit Court for Washington County, where it was concluded.

The former shows the plaintiff in error was arraigned, pleaded not guilty, and put himself on his country ; that a jury was impannelled and charged, and having failed to agree, were discharged by the Court. Whereupon, on motion and affidavit of the plaintiff in error, the cause was removed from Carroll to the Circuit Court for Washington County, for trial.

The plaintiff in error having been arraigned, and having pleaded in the Circuit Court for Carroll County,

and afterwards removed his case to another Circuit Court, he was placed in the latter in the same position as to procedure, that he occupied in the former ; he appeared on the record, pleading not guilty, and demanding a trial by jury.

At this stage the case was taken up by the Circuit Court for Washington County.

The ceremony of arraignment is to identify the prisoner, inform him of the charge, and demand whether he is guilty or not guilty. These being once performed and entered of record, it was unnecessary to repeat the form in the Court to which he was removed. The objection, that the docket entries do not show all the facts, which are extended at large on the record, does not, in our judgment, impair the validity of the latter. The Clerk is the amanuensis of the Court, and although the docket entries are the ordinary memoranda of what was transacted by the Court, made in brief, yet the more formal and solemn averment of the record, must be supposed to be made by the authority of the Court, and given full faith and credit as such.

The third ground of objection, as classified above, is, if the Maryland statute be so construed as that a party may be convicted of a deliberate and premeditated killing, and so, of murder in the first degree, on an indictment which does not aver a wilful, deliberate and premeditated killing, made by the statute necessary ingredients of murder in the first degree, then that statute is in violation of the 21st Article of the Declaration of Rights, and Article 6 of the Amendments to the Constitution of the United States.

The Articles referred to guarantee to every man the right *to be informed of the accusation against him;* "to have a copy of the indictment, etc., and a speedy trial by an impartial jury." If we have succeeded in showing that the objections to the indictment were not tenable, in view

of the authorities in this and other States, and that the construction of the statutes was established by a series of judicial decisions, in favor of that form of proceeding, we conceive we have virtually disposed of this objection.

It is substantially the same which was made and overruled by the Judges of Massachusetts in the case of the *Commonwealth vs. Green.* It assumes, that the indictment for murder at common law, does not inform the prisoner of the accusation against him, and hence concludes, that the law which warrants such a mode of accusation, is unconstitutional. By such a process of reasoning, all Acts of legislation might be avoided.

The sages of the law, contemporaries of those who framed our organic institutions, could not have overlooked such an objection if it existed, and having held otherwise we adhere to their construction.

In consideration of the unusually grave and solemn position of the plaintiff in error, and the earnest zeal, devotion and learning of his counsel, we have thus far entered into the merits of the questions as if the record was properly before us; and after the most careful examination, and reflection, conclude that the plaintiff in error, has enjoyed every right and privilege guaranteed by our law and Constitution, to persons accused of crime, and that there is no error in the proceedings brought before us for review.

But that this case may not hereafter be considered as a precedent, we feel constrained to decide that the writ of error does not properly lie in this case. The errors assigned, if any, were subjects of demurrer, or in arrest of judgment, and in this case there was neither. The Code, Art. 30, sec. 82, prohibits reversal "for any matter or cause, which might have been a subject of demurrer to the indictment." *Kellenbeck & Brash vs. The State,* 10 *Md.,* 439.

The 4th rule of this Court, most emphatically prohibits it from deciding any point or question, which does not plainly appear by the record, to have been tried and decided by the Court below.

It is unnecessary to multiply authorities to a point, so clear.

The law, and the rule, are founded upon the most obvious principles of public policy, and cannot be violated without most pernicious consequences.

The writ of error must therefore be dismissed.

*Writ of error dismissed.*

(Decided 29th January, 1874.)