Annie S. Farrell, by her husband and next friend, James J. Farrell *vs.* The Mayor and City Council of Baltimore.

### *Appeal—Amendment.*

An appeal was entered in Baltimore City Court from the decision of the Street Commissioners assessing benefits to the appellant in the matter of the opening of a street. It appeared that no benefits had been assessed, but that damages had been awarded to her for taking her property. Held :

That the appeal should be amended by substituting the word "damages" for "benefits."

Appeal from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before Alvey, C. J., Miller, Robinson, Irving, Bryan, Fowler, McSherry, and Briscoe, J.

*J. W. Bryant,* for the appellant.

*Albert Ritchie, City Counsellor,* (with whom was *William A. Hammond, City Solicitor,* on the brief,) for the appellee.

Bryan, J., delivered the opinion of the Court.

Mrs. Farrell, by her husband and next friend, entered an appeal in Baltimore City Court from the decision of the Street Commissioners assessing benefits to her in the matter of the opening of Durham street. It appeared that no benefits had been assessed to her, but that dam-

ages had been awarded to her for taking her property.' She therefore moved to amend her appeal by substituting the word "damages" for "benefits." The "benefits" assessed by the Commissioners are the amounts which they decide ought to be paid by the landholder for the increase in the value of his property which is caused by the opening of the street; the "damages" are the amounts to be paid by the city for the injury inflicted upon the property by the same cause. These terms are usually found in exactly the opposite association of ideas, and consequently by inadvertence, one of them might readily be used by mistake for the other. The appellant certainly did not intend to appeal from a decision which determined that she was to pay nothing for benefits; it is just as certain that she intended to appeal from a decision which she regarded as affecting her interests injuriously. The only decision which could injure her was the award of damages; if she was not allowed a sufficient compensation for her property, she had reason to complain of the decision, and to wish to have it reviewed and modified. If this is not what she appealed from, then her appeal was intended by her to be a perfectly meaningless and nugatory proceeding. But it is transparent that the word *"benefits"* was used by a mere slip of the pen in the paper filed as an appeal, and that its meaning was to obtain a review of the decision on the question of *damages.* It is the duty of the Court in construing written instruments to ascertain their meaning; and this must be done, even if it is necessary to depart from the literal meaning of the terms employed. Judge STORY mentions a case where a person signed a paper in these words: "Borrowed of J. S. fifty pounds, which I promise *not* to pay," and it was held to be a good promissory note, and that the word *not* ought to be rejected. *Story's Promissory Notes, sec.* 12. Here the meaning was evident upon the paper as it stood without any change.

It was not necessary to reform the instrument, because the Court construed it to mean what the parties must have intended, although in direct opposition to the words used. In *Story on Contracts, section* 776, we find other cases to the same effect as follows: "Thus, where the condition of a bond for the payment of money was, that the bond should be void if the money was *not* paid, it was held to be wholly inconsistent with the nature of the bond itself, and was therefore rejected, leaving the bond in full force as a perfect contract. * * * The same rule applies to cases where an evident mistake has been made in an instrument. * * * * So also, where a bond was given, conditioned to pay one hundred pounds by six equal instalments, on certain specified days, 'until the full sum of *one* pound should be paid,' the Court allowed the word *hundred* to be inserted after *one*, in order to effectuate the evident intention of the parties." And instances of the like kind are not wanting in the Courts of our own State. In *Ellicott vs. Peterson's Executors*, 4 *Md.*, 476, a commission purported to have been issued in a case in which Ellicott was plaintiff, and the defendants were Peterson and Turner, executors of John Turner, deceased; the testimony taken under it was offered in a case in which Ellicott was plaintiff and the defendants were Peterson and Turner, executors of John Peterson, deceased. It was held that the testimony was not admissible; but it was also held that if there had been proof that there was no case on the docket against Peterson and Turner, executors of John Turner, deceased, the words "*John Turner*" ought to have been regarded as a clerical misprision. In *McCoy, Garn. vs. Boyle*, 10 *Md.*, 391, the affidavit of a plaintiff to obtain an attachment was dated September 23, 1853, and the warrant of the magistrate, directed to the clerk of *Baltimore County Court*, was dated the same day, and the attachment was dated September 22d, 1853, the day before the

Farrell *vs.* Mayor, &c. of Baltimore.

date of the warrant. On a motion to quash the attachment, it was held that its date was manifestly a clerical error, and that it was the duty of the Court to order an amendment of it. Although the warrant was addressed to the Clerk of *Baltimore County Court*, "Mr. Norwood" was directed to issue the writ. There was no *"Baltimore County Court"* in existence at the time, but Norwood was Clerk of the Court of Common Pleas. The Court regarded the words "Clerk of Baltimore County Court" as surplusage, and having no effect; and held that the warrant was properly issued from the Court of Common Pleas. In *Newcomer and Wife vs. Kean*, 57 *Md.*, 121, an action was brought by husband and wife for slander, and the conclusion of the declaration was "to the great damage of the plaintiff, and the plaintiff claims ten thousand dollars damages." After verdict for the plaintiff a motion was made in arrest of judgment on the ground that the damages should have been claimed for both plaintiffs. This Court decided that the motion must be overruled, and said: *"Clerical misprisions* are construed to be not only mistakes of the *clerk in Court*, but such slips in writing as *a clerk* of the party might make. The suit was brought by the husband and wife to recover damages, and both of them had an interest in the judgment. It is plain the pleader meant to claim damages for both, and the word plaintiff was inadvertently written for plaintiffs." *Davis vs. State*, 39 *Md.*, 355, shows in a still more striking manner the fixed policy of the law to give effect to the real meaning of documents, without regard to inadvertent lapses of a merely verbal character. Davis was indicted for murder in the Circuit Court for Carroll County, and having removed his case to Washington County, was convicted of murder in the first degree, and sentenced to death. He brought the record to this Court by writ of error. The transcript of the proceedings commenced as follows:

Farrell *vs.* Mayor, &c. of Baltimore.

"*The State of Maryland* Be it remembered, that
    *vs.* Charles W. Hood, etc., good
*Joseph Davis.* and lawful men of *Balti-
more County*, who being then and there empannelled,
sworn and charged to inquire for the State of Maryland,
for the body of Carroll County, having withdrawn from
the bar of the Court here, afterwards return, and pre-
sent to the Court here a presentment in form following."

One of the errors assigned was that "good and lawful
men of *Baltimore County*" could not legally find an
indictment for murder in the Circuit Court for Carroll
County. And this was absolutely true. But this Court
held, upon an inspection of the whole record, that it was
"obvious that the word 'Baltimore' was a clerical mis-
prision, which did not mislead or prejudice the prisoner,
and could not affect the validity of the proceedings, or
the verity of the record." The record was therefore in-
terpreted to mean that the Grand Jurors were good and
lawful men of Carroll County, and the assignment of
error was disallowed. Further citation of authorities is
unnecessary to show that the amendment of the words
of the appeal ought to have been permitted. .It is the
leading object and purpose of the Courts to administer
justice so far as they are not prevented from doing so by
rigid rules which have become firmly imbedded in the
law. In the instance now before us we are enabled to
do so by following well established precedents.

The City Court refused to allow the amendment, and
refused to allow evidence on the subject of damages to
be given to the jury. These rulings must be reversed,
and the amendment made, so that the question of dam-
ages may be tried.

*Rulings reversed, and*
    *cause remanded.*

(Decided 16th March, 1892.)