Clare *vs.* The State.

(Decided 17th February, 1869.)

---

JOHN CLARE *vs.* THE STATE OF MARYLAND.

*Writ of Error — Practice in the Appellate Court — Code of Public Local Laws, Article 4, sections 601 to 618, providing for the selection of Jurors in the*

*city of Baltimore — Objection to the mode of select-*
*ing a Grand Jury may be taken by a Plea in Abate-*
*ment after Indictment found.*

A writ of error can not legally issue upon a judgment overruling the
pleas of the prisoner and granting him permission to further answer
the indictment—such judgment not being final.

A writ of error in a criminal case, improvidently issued upon a judgment
not final, does not suspend the trial of the prisoner, nor affect the va-
lidity of the subsequent proceedings.

A writ of error after final judgment, brings up for review by the appel-
late tribunal, the entire proceedings in the inferior Court.

Whilst matters of fact *per se*, are not the subject of review by the Appel-
late Court, yet when the facts are found by the inferior Court, and
embraced in its decision and made part of the record thereof, the cor-
rectness of the judgment can only be determined by reference to the
facts therein referred to; the truth of the facts are not inquired into,
but the judgment deciding the law as applicable to the facts may be
reviewed on writ of error.

The law providing for the selection of jurors for the city of Baltimore,
(Public Local Laws, Article 4, sections 601 to 618, inclusive,) amongst
other things declares that the four Judges, viz: the Judge of the Supe-
rior Court of Baltimore city, the Judge of the Court of Common Pleas,
the Judge of the Circuit Court of Baltimore city, and the Judge of the
Criminal Court of Baltimore, or any two of them, forming a quorum,
shall meet at such place in the city of Baltimore as they shall appoint,
on such day in the month of March in each year as they shall agree
upon, "and it shall be the duty of the said Judges, meeting as afore-
said, at such meeting or at such adjourned meeting, as they shall hold,
for the purposes thereinafter mentioned, in the month of March in each
and every year as aforesaid, to select the names of seven hundred and
fifty persons, qualified under the law of the State, to serve as grand and
petit jurors in said city." The collector of taxes is then required to
furnish a list of all the taxable male inhabitants of the city, to the
Judges, in order to assist them in making out the list of jurors; and
the Sheriff is directed before each term of the Criminal Court to sum-
mon twenty-three persons from the list prepared by the Judges, to
serve as grand jurors for the ensuing term of said Court. Without a
meeting of the Judges, or any two of them, in March, 1866, or at any
time afterward for the purpose of making the required selection, one of
the deputy clerks of the Superior Court, prepared a list from persons on

Clare *vs.* The State.

the list of the former year, who had not served as jurors, he making up the requisite number from a list furnished by the city collector, and the list so made by him, he presented *seriatim* and separately to the Judges in their respective Court rooms, and without any very particular examination, it was approved and adopted by them separately and without consultation with each other. From this list the grand jury for the May Term, 1866, of the Criminal Court of Baltimore, was selected. HELD:

1st. That the persons so selected as grand jurors were not qualified to act as such, and an indictment found by them was null and void and should have been quashed, and the prisoner indicted *de novo.*

2d. That objection to the mode of selecting such persons as a grand jury, could be taken advantage of by the prisoner, by a plea in abatement, after indictment found.

WRITS OF ERROR to the Circuit Court for Baltimore County.

The plaintiff in error was indicted for the murder of Henry B. Grove, in the Criminal Court of Baltimore, at the May Term of 1866. The indictment contained two counts: both charging the offence of murder by shooting with a pistol. To the indictment the prisoner pleaded in abatement, substantially as follows:

1st. That the indictment was not found, nor was the presentment made by the Grand Inquest of Baltimore city.

2d. That by the 601st section of Article 4, of the Code of Public Local Laws of the State of Maryland, it is provided that the Judge of the Superior Court and others, therein named, shall meet at such place as they may appoint, during the month of March in each and every year, to select the names of seven hundred and fifty persons, &c., to serve on the grand and petit juries of the city; that they did not, in the month of March, 1866, or at any other time, select the said number of persons, or any other number of persons, qualified to serve as grand jurors at the May Term, 1866, of the Criminal Court of Baltimore, being the term at which the said indictment was found, and that there never has been any such appointment of jurors qualified under the laws of this

State to serve as grand jurors for said Court at said term, and therefore he says that the presentment was not made, nor the indictment found, by the Grand Inquest of the city of Baltimore.

3d. That by the 608th section of the said Article, it is provided, that it shall be the duty of the Judge of the Superior Court and others, to cause the names of the several panels, &c., to be drawn in the mode prescribed by the said Article, and the amendment thereto, to be entered in five several books, &c., and that the books shall be certified by the said Judges, and shall be denominated the jury books for Baltimore; and it is further provided by the 609th section of said Article, that one of the books aforesaid, shall be deposited with the Sheriff, who, as required by the Act of 1864, ch. 106, shall summon, &c., twenty-three of the said persons to serve as grand jurors, and he says that the Judges did not prepare the names, nor certify the jury books as required, &c., before the commencement of the May Term of the Criminal Court aforesaid, when, &c., this indictment was found, and therefore he says that the said presentment was not made, nor said indictment found, by the Grand Inquest of Baltimore city.

4th. That the said presentment was made and the said indictment found by certain persons (naming them) assuming to act as grand jurors, who were not qualified, &c., to act as such, &c., in this, that their names had not been selected by the Judges, &c., in March, 1866, &c.; and in this, that the names were not entered in the order in which they were drawn, &c.; and in this, that a copy of the jury book required to be deposited with the Sheriff was not certified by the Judges, &c.; in this, that the Judges did not assemble, &c., ten days before the May Term, &c., of said Court, at which term this presentment was found, &c.

5th. That four of the grand jurors (naming them) by whom said indictment was found, were not duly and legally quali-

Clare *vs.* The State.

fied to act as such grand jurors, in this, that they had served within the period of two years from the time they assumed to act as such, &c., &c.

6th. That one of the grand jurors (naming him) by whom said presentment was made and indictment found, was not then duly and legally qualified therefor, in this, that he was not summoned, but substituted and summoned by the Sheriff contrary to law, in lieu of another, (naming him,) originally summoned and discharged, &c.

7th. That the persons (naming them) assuming to act as grand jurors, by whom said presentment was made and indictment found, were not selected by the Judges as required by the Public Local Law, &c.

8th. That said presentment was made, and indictment found, by certain persons (naming them) assuming to act as grand jurors, &c.; and that they were not qualified and competent to act as such, &c., in this, that they were not selected by the Judges, &c., as required by the Act of Assembly, &c.; and the prisoner prayed judgment of the indictment, and that the same might be quashed.

The prisoner after pleading as above, on suggestion, that he could not have a fair and impartial trial, had his case removed by the Court, to the Circuit Court for Baltimore county in August, 1866. At the trial in December, 1866, the Court (EMORY, J.,) decided that the prisoner's first, second, third, fourth, seventh and eighth pleas in abatement, which the State had traversed, could not be sustained, and that the matters contained in the fifth and sixth pleas, to which the State had demurred, were not sufficient in law to quash the indictment, and permission was given to the prisoner to further answer the indictment. From the judgment of the Court overruling these pleas, and allowing the prisoner to further answer the indictment, the prisoner, on the 5th of December, prayed for and obtained a writ of error, and a record of the judgment, with all things thereto relating, was accordingly transmitted to this Court.

Subsequently the prisoner suggested that pending the writ of error in the Court of Appeals, it was not competent for the Circuit Court for Baltimore county to take further proceedings in the case, which suggestion was overruled by the Court. The prisoner thereupon pleaded "not guilty." The trial proceeded, and a verdict of "guilty of murder in the first degree" was rendered. A motion in arrest of judgment was then made by the prisoner, which was overruled by the Court, and sentence of death pronounced against him. A second writ of error was then prayed and granted, and the cause transmitted to this Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER, GRASON, ALVEY and ROBINSON, J.

*Orville Horwitz* and *I. Nevett Steele,* for the plaintiff in error :

Under the provisions of section 601 of Article 4 of the Code of Public Local Laws, it was imperative on the Judges, or at least two of them, to "*meet* at an appointed place in the month of March in each year," and their duty, "*meeting as aforesaid,* at such meeting to select the names of seven hundred and fifty persons, qualified under the law of this State, to serve as grand and petit jurors." No such meeting took place; nor did any meeting take place; there was no consultation, no joint selection, no action at all on the part of the Judges. *Commonwealth vs. Lippard,* 6 *S. & R.* 396 ; *King vs. Beeston,* 3 *T. R.* 592 ; *King vs. Williams,* 2 *M. & S.,* 141 ; *Palmer vs. Do.,* 2 *John. Cases,* 346 ; 1 *Surratt's Trial,* 45 ; *Barney vs. The State of Miss.,* 12 *S. & M.,* 68, 71 ; *Leathers vs. The State of Mississppi,* 26 *Miss.,* 77 ; *The State vs. Jacobs,* 6 *Texas,* 99 ; *Ex parte Rogers,* 7 *Cowen,* 526 ; *Angell & Ames on Corporations,* *ch.* 14, *sec.* 11.

Under section 603, of Article 4 of the Code, it was the duty of Judges to have appointed a day on which to require the clerks of the several Courts or a majority of them to meet, &c.

This was not done. *Rex vs. May,* 5 *Burr,* 2682 ; *The State vs. Merriman,* 7 *H. & J.,* 90, 91 ; *The State vs. Newer,* 7 *Blackford,* 307.

By the same section it is provided that the ballots must be drawn by the Sheriff or one of his deputies. It appears that the ballots were drawn not by the sheriff, but only *in his presence,* by Mr. Prevost, a deputy clerk in the office of the clerk of the Superior Court. *State vs. Williams,* 5 *Porter,* 135 ; *Vattier vs. The State,* 4 *Blackford,* 73.

It was the duty of the Judges in accordance with section 608, to cause the names of the panels and of the other jurors drawn to be entered in five several books, in the order in which the said panels and names were drawn as aforesaid ; and the said books shall be certified by the said several Judges to be *true copies of each other,* and shall be denominated *jury books for Baltimore city.* The Judges did not cause them to be so entered ; and did not certify to any copies so made.

The Judges, or two of them, are by law compelled to attend at the drawing in order that they may "*cause the names to be entered* in the order in which they are drawn." *State vs. Conner and others,* 5 *Blackford,* 325 ; *The People vs. McKay,* 18 *Johns. (N. Y.)* 212.

After the record by the order of the Court granting the writ of error had been transmitted to the Court of Appeals, there was no cause before Baltimore County Court in which any proceedings could be had. *Spaulding vs. Milwaukie and Horicon R. Road Co.,* 11 *Wis.* 158 ; 15 *Iowa,* 444.

The motion in arrest of judgment should clearly have been granted. *Ford vs. State,* 12 *Md.,* 514.

*Isaac D. Jones,* (Attorney General) for the State :

The first plea is virtually a plea of *nul tiel record* of the presentment and indictment. The record avers that the twenty-three jurors named were good and lawful men of the city of Baltimore, who being then and there empannelled, sworn and charged, &c., returned and presented to the Court

the presentment, upon which a *capias* issued and was returned, "*cepi,* in jail." The record does not show that the prisoner made any challenge to the array or to the polls of the grand jurors, although he had full notice and opportunity so to do; but it shows that the indictment was duly found, returned to and received by the Court without any such challenge. The record therefore has every legal requisite of certainty and sufficiency, and cannot be contradicted. *Bacon's Abridg. Juries,* 3, *pp.* 731, 732; *The State vs. Brooks,* 9 *Ala.,* 10; 2 *Hawk. P. C., ch.* 25, *sec.* 16; *Boyington vs. The State,* 2 *Porter,* 123.

The second, third, fourth, seventh and eighth pleas set forth certain alleged informalities or want of literal compliance with the law, prescribing the mode of selecting and summoning the grand jurors. There is no precedent or authority for such pleas at common law, and no statute declares an indictment void on account of any such matters.

The matters set forth in these five pleas as to the manner of drawing and summoning the grand jurors, if available at any time or in any mode, could be taken advantage of only by challenge to the array before indictment found. This is undoubtedly the English rule, as well as that existing in most parts of the United States. *Wharton's Amer. C. Law,* secs. 469, 472; 2 *Hawk. P. C., ch.* 25, secs. 15 *and* 16; 3 *Bl. Com.,* 358; *Bac. Abr. Juries, A;* 2 *Hale, P. Cr.,* 155; *Comm. vs. Smith,* 9 *Mass.,* 107; *Vanhook vs. The State,* 12 *Texas,* 252, 266, 268, 271, 272.

It would not have been good cause of challenge to the array that irregularities in the drawing of the jurors existed, as that some of the officers charged with the duty were absent, or that they employed a clerk to write the names selected and put them into the wheel. *Wharton's Amer. C. L.,* sec. 469; *Comm. vs. Lippard,* 6 *S. & R.,* 395; *The People vs. Jewett,* 3 *Wend.,* 314; *State vs. Rickey,* 5 *Halst.,* 83; *Boyington vs. State,* 2 *Porter,* 100. The subsequent cases of *State vs. Middleton,* 5 *Porter,* 484; *The State vs. Ligon,* 7 *Porter,* 167, *and The State*

*vs. Clarissa,* 11 *Ala.,* 57, stated by Wharton to have determined otherwise, were pleas in abatement, expressly authorized by the Alabama Code. *See Code, sec.* 3591.

The law was substantially complied with, even if the question were properly before the Court. 2 *Hawkins, P. C.,* 307; *The State vs. Anselme,* 15 *Iowa,* 46.

STEWART, J., delivered the opinions of the Court.

The writ of error sued out by the plaintiff in error in this case, bearing date the 5th day of December, in the year 1866, is from an interlocutory judgment of the Court below, and is not such final determination from which a writ of error can be rightfully sued out. No writ of error can legally issue until after final judgment below. The further proceedings in the cause below, notwithstanding the issuance of this writ, are not affected thereby. The writ was null and void, and is accordingly dismissed.

*Writ dismissed.*

The writ of error in a criminal case does not lie until after final judgment. The Court below was clearly right in proceeding with the trial of the prisoner after the decision overruling his pleas in abatement, *non obstante,* the issue of the writ of error thereon, allowance of the same and the transmission of copy of the record to this Court. That writ ought not to have been issued or allowed at that stage of the proceedings; but the improvident issue and allowance thereof, could not properly suspend the trial of the prisoner, or affect the validity of the subsequent proceedings. The writ of error, after the final judgment, brings up for review the record of the proceedings below, including the presentment, indictment, arraignment, the pleas, suggestion of prisoner and order thereon, for the removal, the issues, judgment of the Court finding the facts, deciding the law thereon, overruling certain of the pleas, sustaining demurrer to others, and giving to the prisoner leave to further answer, prisoner's suggestion to sus-

pend the trial upon the production of the writ of error, judgment overruling the same, plea of not guilty, verdict of the jury, motion in arrest of judgment and the overruling thereof, and the final judgment and conviction of the prisoner.

There is no doubt of our duty to review the judgment below overruling the pleas in abatement. Whilst matters of fact *per se* are not subjects of review here, yet when the facts are found by the Court below, and embraced in its decision and made part of the record thereof, we cannot determine as to the correctness of the judgment without regard to the facts therein referred to. This Court does not enquire into the truth of the facts found by the Court below; but will review its judgment, deciding upon the law applicable to the facts. The facts found in such case are a part of the judgment.

If the Court below had overruled the pleas in abatement, without stating the facts upon which its judgment was based, there would be no ground to authorize this Court to interfere with its action. These views were expressly announced by the Court of Appeals, in the case of *Ford vs. State*, 12 *Md.*, 547. "Whatever assumes the *solemnity* of a *judgment* of a Court of record, is part and parcel of the record, and examinable in the appellate tribunal, on a writ of error. In all cases in which a judgment is to be pronounced in the progress of the case, such judgment, when rendered, becomes the act of the Court, and is a matter of law as well as were the premises on which it was rendered matters of fact; and whilst the Court of review cannot find the facts, yet when the facts are found by the Court or the jury below, as the case may be, it is but its proper and legitimate province to see that the inferior Court has pronounced correctly the law as applicable to the facts."

From the record in this case it appears the prisoner pleaded in abatement, to the indictment against him, eight pleas, all of which were traversed by the State except the fifth and sixth, to which the State demurred. All the issues were

tried by the Court below, which found the facts, overruled the first, second, third, fourth, seventh and eighth pleas, sustained the demurrer to the fifth and sixth, and gave leave to the prisoner to plead over.

Notwithstanding the facts found by the judgment, the Court adjudged that the law had been *substantially* complied with, and that the grand jury (whose disqualification the pleas of the prisoner had alleged) was legal, competent and qualified. There is manifest error in this judgment of the Court. From a careful examination of that judgment, we do not think the Court has deduced the proper legal conclusion from the facts stated therein. These facts show that the mandatory provisions of the jury law for the city of Baltimore, existing when the grand jury in question was constituted, were not *substantially* complied with. That law declares, amongst other provisions, that the four Judges or any two of them, forming a quorum, "shall meet" at such place in the city of Baltimore, as they shall appoint, on such day in the month of March in each year, as they shall agree upon, and it shall be the duty of the said *Judges, meeting* as aforesaid, at such meeting or at such adjourned meeting, as they shall hold for the purposes hereinafter mentioned, in the month of March in each and every year aforesaid, to *select* the *names* of seven hundred and fifty persons, qualified under the laws of this State, to serve as grand and petit jurors in said city. The collector of taxes is then required to furnish a list of all the taxable male inhabitants of the city, to the Judges, in order to assist them in making out the list; and then the Sheriff is directed, before each term of the Criminal Court, to summon twenty-three persons from the list prepared by the Judges, to serve as grand jurors for the ensuing term of said Court. There can be no doubt that the Legislature, in the enactment of this law, designed to avoid, if possible, vices then existing in regard to the organization of the juries for the city of Baltimore, and to accomplish a reform in that respect. The responsible duties

we have enumerated, were particularly enjoined upon the Judges as possessing, in the estimation of the Legislature, peculiar fitness for the trust. That from their official station as the ministers of justice, and from their superior intelligence and impartiality, they would be the very best instruments faithfully to carry into execution the provisions of the law. That they would, in person, make selection of upright, impartial and capable persons to serve in the capacity of jurymen in the administration of justice in civil and criminal cases. The Legislature expressly imposed this important duty upon the Judges, and did not authorize them to depute their discharge to others. According to the facts found in the judgment of the Court, there was no *meeting* of the Judges, or a majority, or any two of them, in March, 1866, or at any time afterwards, for the purpose of making the required selection, but one of the deputy clerks of the Superior Court prepared the list from persons on the list of the former year, who had not served as jurors, he making up the requisite number from a list furnished by the city collector, and the list so made by him he presented *seriatim* and separately, to the Judges in their respective Court rooms, and without any very particular examination it was approved and adopted by them *separately* and *without consultation with each other*. From such list the grand jury in question was selected.

The grave and responsible duties required of the Judges, were, in fact, attempted to be discharged by one of the deputy clerks. The law never contemplated that juries, to determine life, liberty, reputation and property, should be thus selected when it had specially and emphatically devolved the duty upon the Judges.

Not only was there no *meeting* for consultation on the part of the Judges, for the selection of names of persons to compose the list, but no *meeting* afterwards to approve or reject what had been done by the subordinate official. When presented to each Judge separately, it was adopted without particular examination. We cannot give our sanction to such

a mistaken execution of this law. Its chief provisions have been disregarded—indeed, virtually abrogated. It follows from these fatal omissions, that the body of men assuming to act as a grand jury, and to find the indictment in this case, was not qualified to act as such, because the mandates of the law had not been pursued in their selection.

When these facts, complained of by the pleas of the prisoner, and denied by the State, were found by the Court below, that Court should not have decided that they were mere *informalities*, but *fatal defects*, and quashed the indictment, and caused the prisoner to be indicted *de novo*. 2 *H. P. C.*, ch. 34, sec. 9.

The manifest violation of the law in the material provision, to which we have adverted, renders it unnecessary to review the minor details particularly referred to in the pleadings. To guard for the future against the fatal consequences of neglect, from any cause, to pursue the strict requirements of this jury law, the Act of 1867, ch. 269, was passed.

This last law has qualified the future construction of the jury law, by expressly declaring the provisions thereof shall be construed as directory merely.

But to show how imperative the Legislature regarded the strict observance of their directions, this last act has denounced heavy penalties against their wilful violation. The attorney general insisted that the accused could not take advantage of the omissions to which we have adverted, in the form of pleas in abatement after indictment found, but that the objection should have been made at an earlier stage by challenge to the array. This question would be more directly presented, if the State, instead of taking issue upon the pleas, had entered a *ne recipiatur*, moved to strike out the pleas or demurred. But as this question has an important bearing upon the practice in criminal cases, we shall consider it sufficiently presented, and dispose of it. By the common law, any one under prosecution for crime, might challenge any of the persons returned on the grand jury, as being out

lawed, for felony, &c., or *villeins;* or returned, at the instance of the prosecutor, or not returned by the proper officer, &c.; after the Statute of II Henry IV, ch. 9, which enacted that no indictment should be made by any person therein mentioned, as disqualified, and that any indictment so made, should be void, there was no question but that any person arraigned upon any indictment contrary to the purview of this law, might plead such matter in abatement of the indictment. The attorney general argued that the right of the accused to plead in abatement, was derived from the provisions of this statute, declaring void indictments made contrary thereto—which statute has not been introduced here.

We have no occasion, in the decision of this case, to determine such question—because the mandatory character of the jury law, in question, according to the construction we have given to it, operates quite as effectually as the Statute of Henry IVth. No grand jury could be lawfully assembled in the City of Baltimore, except by virtue of this jury law. If its essential requirements have been disregarded in reference to the selection and summoning of the grand jury in question, that body had no authority to act as such, and any indictment found by them was void, and must be so regarded by the Courts as if expressly so declared by statute. The legal result is the same. No body of men assembled without authority of law, have the right to assume to act as a grand jury. The current of authority in this country sustains this view. Although there are some decisions of respectable Courts, and *dicta* of eminent Judges, to the effect that the objection in question must be taken by challenge to the array or to the polls; yet the decided weight of authority in this country, is, that the objection, whether to individual jurors, or to the constitution of the whole body, may be taken by plea in abatement, or motion to quash after bill found, and before plea to the merits. This position is also sustained by sound reason. To confine the right of objection to the qualification of the grand jury to challenge to the array, would, in practice, ren-

der it utterly worthless. In many, perhaps in a majority of cases in our criminal practice, the first notice that a party has of an accusation against him is a bench warrant or *capias*, issued upon a presentment or indictment. Where parties are under arrest they are not brought into Court when the grand jury are empanelled and sworn, and often have not the opportunity to make the challenge, either to the body or individual members. No list of those who are to compose the grand inquest is ever furnished them; and most generally, they have no means of knowledge upon the subject. To a party thus situated, it would be but a mockery of law and justice to compel him to such defence before indictment found, or to be considered as forever waiving the objection to the competency of the body, alone authorized to make the initial step towards his lawful conviction. It is indispensable, in a criminal trial, that the grand inquest required to find the indictment should be constituted of "good and lawful men," and if the body, or any part of it, lie under substantial disqualification, they may be challenged by the prisoner before the bill is presented; or after the finding, the prisoner may plead the objection in abatement thereof.

We fully concur in the remarks of Judge HITCHCOCK, in his dissenting opinion in *Boyington vs. State,* 2 *Porter,* 143, which was subsequently followed in the Alabama decisions overruling the opinion of the majority in that case, "what principle of public policy can be more sacred than that the sources of justice should be pure? and wherein is the inconvenience greater after bill found than before? A bill is found to-day, the defendant put on trial to-morrow. He can allege nothing against the grand jury, when the next entry on the minutes may be an order discharging the same jury, at the suggestion of any idle bystander, against whom no charge is made. Ought not the Court rather to say that indictments found by persons not good and lawful men, shall be revoked, annulled and holden for none, forever? If I am to be put on trial for my life, let my accusers, at least, be *boni et legales*

homines." See also *State vs. Rockafellow*, 1 *Halsted*, 332; *State vs. Symonds*, 36 *Maine*, 128; *Doyle vs. The State*, 17 *Ohio*, 222; *State vs. Williams*, 5 *Porter*, 130; *The State vs. Conner*, 5 *Black.*, 325; *McQuillen vs. The State of Mississippi*, 8 *Smd., & Mar.*, 587; *Barney vs. The State*, 12 *Smd., & Mar.*, 69; *Low's Case*, 4 *Greenleaf*, 439. It results from these views that there has been no legal trial and conviction of the prisoner in this case.

Under any government of law the trial of persons accused of crime, from its commencement to the conclusion, should be scrupulously conducted according to the requirements of the law. Not only the sacred administration of public and private justice, but the good order of the community, the security and protection of life, liberty and property, cannot be preserved, except by the inflexible maintenance and impartial enforcement of the statutory, as well as the fundamental laws of the land. Where the substantial provisions of the law have not been regarded, and a party has been convicted in violation thereof, and without their sanction, such party is entitled to a reversal, if legal steps in due time are taken to obtain redress.

For these reasons the judgment of the Court below overruling the pleas in abatement, and the final judgment of conviction of the prisoner, must be reversed; but this does not entitle him to be discharged, or exonerate him from a legal trial for the same offence. He may be held under the original commitment or *capias*, until a new indictment is framed, under which a trial may be had; or until he is discharged in due course of law.

*Judgment reversed.*

(Decided 18th February, 1869.)