## SMITH *v.* STATE

[No. 430, September Term, 1965.]

*Decided November 30, 1965.*

*Morris Lee Kaplan* and *George L. Russell, Jr.,* for the appellant.

*Morton A. Sacks, Assistant Attorney General,* for the appellee.

OPPENHEIMER, J., delivered the majority opinion of the Court. HORNEY and BARNES, JJ., concur in the result.

The appellant, Smith, was indicted for murder by a grand jury for the City of Baltimore on November 17, 1964, prior to the decisions of this Court in *Schowgurow v. State,* 240 Md. 121, 213 A. 2d 475 (1965), and *State v. Madison,* 240 Md. 265, 213 A. 2d 880 (1965). He pled not guilty by reason of insanity at the time of the commission of the crime, sane now, and not guilty generally. At the time of his pleas and during all the proceedings in the trial court he was represented by experienced counsel privately employed. He was tried on October 14, 1965,

three days after the *Schowgurow* decision, in the Criminal Court of Baltimore where he elected to be tried by Judge Sklar without a jury. It has been stipulated by counsel, and the transcript of the proceedings makes clear, that, in open court, immediately before his trial, Smith intelligently and knowingly waived all possible defects in the indictment. This waiver followed clear and thorough explanations of the effect of the *Schowgurow* decision by Judge Sklar and by Smith's counsel. Smith's counsel had also explained the effect of *Schowgurow* to Smith the day before. After these explanations, Smith said that it was his own wish and desire to waive the defective indictment and to stand trial immediately; that this decision was his own free wish and without any suggestion or pressure. He was tried the same day and was found to be sane at the time of the commission of the crime and at the time of the trial. The court then proceeded with the trial on the indictment. After the State had completed its testimony, Smith's counsel moved for a verdict of acquittal as to first degree homicide and a verdict of acquittal as to the entire indictment. Both of these motions were denied. Smith, having been advised as to his rights, voluntarily took the stand to testify in his own behalf. At the conclusion of the case for the defense, Smith's counsel again made the same motions for judgments of acquittal, and the motions were again denied. The court then found Smith guilty of second degree murder. Sentence was deferred pending a motion for a new trial.

Subsequently, on October 25th, before sentence was imposed, Smith asked the court for permission, which was granted, to file a motion to dismiss the indictment on the ground he had been indicted by an illegally constituted grand jury, even though he had waived his right to challenge the indictment in open court before his trial and conviction. The court denied the motion and also denied the motion for a new trial. Smith was thereupon sentenced to 18 years in the Maryland Penitentiary. Smith notified the court of his desire to appeal and the judge appointed his trial counsel and co-counsel to represent him as an indigent defendant on the appeal to this Court.

The first ground of appeal is that the trial court erred when it denied Smith's motion to dismiss the indictment on the ground that it had been returned by an illegally constituted grand jury.

Smith contends that, under *Schowgurow*, the grand jury which had indicted him was illegally constituted and that any and all indictments issued by such a jury are null and void. Smith contends that his waiver of his right to challenge the jury which indicted him was invalid because he can not waive a constitutional right and can not waive an indictment that is an actual nullity. He argues that his waiver, even though made voluntarily and knowingly, had no legal effect because the indictment against him never had any legal existence and therefore can be challenged at any time. He claims the denial of his motion and his subsequent conviction constituted a deprivation of his constitutional rights to due process of law under the Fourteenth Amendment, and were in violation of the Maryland law as to the effect of an indictment by a grand jury improperly constituted.

At the argument before us, Smith's counsel frankly conceded that, under their contention, not only was the indictment of Smith null and void but that all indictments brought at any time by any grand jury which, under our decision in *Schowgurow*, was improperly selected, were null and void and that any convictions thereunder had no legal effect. They contend that even though our decision in *Schowgurow* was brought about by the reversal by the Supreme Court of the United States of this Court's decision in *Torcaso v. Watkins*, 223 Md. 49, 162 A. 2d 438 (1960), and even though prior to *Schowgurow*, the grand juries operating throughout the State were selected in accordance with the Maryland law as it then existed and had existed for over a century, nevertheless, the effect of *Schowgurow* and *Madison* is to render all such proceedings a complete nullity. They concede that, if their argument prevails, our holding in *Schowgurow* that the principle therein announced was to be prospective only, except as to convictions which had not then become final, would be inoperative and that every convicted defendant incarcerated in the State of Maryland would have to be freed.

There is nothing in our decisions in *Schowgurow* and *Madison*, nor in their legal effect, upon which to predicate so catastrophic a conclusion. In *Schowgurow*, we held that the decision of the Supreme Court in *Torcaso v. Watkins*, 367 U. S.

488 (1961), overruling the decision of this Court, made the provision of the Maryland Declaration of Rights which excluded persons from jury service because of their lack of belief in a Supreme Being, invalid under the federal constitution. In *Madison,* we held that, because of the provisions of both the Maryland and federal constitutions, it would be a deprivation of due process and the equal protection of the laws if believers, as well as non-believers, were not accorded the right to be indicted and tried by grand and petit jurors from which non-believers were not unconstitutionally excluded under the Supreme Court decisions. In neither case did we hold that the grand jurors who indicted Schowgurow and Madison were not competent and qualified. Nor did we hold, in either case, that the oaths administered to the jurors were unconstitutional or illegal in any way because of their references to God. It was only the fact that all prospective jurors were required to take the oath irrespective of their individual beliefs about religion and to affirm their belief in God, that, under *Torcaso,* rendered the method of selection invalid. If each prospective juror had been freely permitted, according to his individual desire, to take the traditional oath or merely to affirm, absent any prior interrogation as to belief, the exclusion which *Torcaso* and other Supreme Court decisions rendered unconstitutional would not have existed.

Smith, like Schowgurow and Madison, was indicted by a grand jury, every member of which was competent and qualified to serve. Maryland had jurisdiction over Smith and the subject matter of the alleged offense. There is no question but that Smith had reasonable notice of the charge and opportunity to be heard. The court in which he was tried had authority, under our constitution, to try him. The grand jury which indicted him was selected in accordance with what was then and had been the law of this State until, by reason of decisions of the Supreme Court, a provision of that law was declared invalid. Under these circumstances, in a case in which there had not been a final conviction, the defect in the method of the selection of the grand jury was error, but error which did not render the indictment inoperative unless Smith validly exercised his right to attack it. It was error which gave him the

right, by timely challenge, to have his indictment quashed, but error which he could knowingly and intelligently waive. This is the law under both our federal and state constitutions, as indeed it must be, if the preservation of order by government, which is the basis of any society, is to survive.

We shall first consider the federal decisions, in connection with Smith's contention of deprivation of due process of law, and then the decisions of this Court as to the effect of an indictment brought by a grand jury improperly selected.

I

In *United States v. Gale*, 109 U. S. 65 (1883), the defendants had been indicted for misconduct as election officers at a Florida election of a congressman. In empanelling the grand jury, four persons, otherwise competent, were excluded from the panel under a federal statute, for voluntarily taking part in the Rebellion and giving aid and comfort thereto. The defendants made no objection to the indictment until after a plea of not guilty and conviction in a United States circuit court, when objection was first taken on a motion in arrest of judgment. The judges of the circuit court certified several questions to the Supreme Court, one of which was whether the disqualifying statute was unconstitutional, and another of which was whether judgment could be rendered against the defendants on an indictment found by a grand jury empanelled under the disqualifying section. The Supreme Court did not answer the first of these questions because it found the defendants had waived it by not entering a timely challenge to the array. It answered the other question in the affirmative. In delivering the opinion of the Court, Mr. Justice Bradley said:

> "A disqualified juror placed upon the panel may be supposed injuriously to affect the whole panel; but if the individuals forming it are unobjectionable, and have all the necessary qualifications, it is of less moment to the accused what persons may have been set aside or excused. The present case is of the latter kind. No complaint is made that any of the grand jurors who found the indictment were disqualified to serve, or were in any respect improper persons. It is only

complained that the court excluded some persons for an improper cause, that is, because they labored under the disqualification created by the 820th section of the Revised Statutes, which is alleged to be unconstitutional. It is not complained that the jury actually empanelled was not a good one; but that other persons equally good had a right to be placed on it * * *

"Some importance is attached to the fact that the court followed an unconstitutional law, or one assumed to be such. We do not see that this is in any wise different from the case in which the court misconstrues the law. The result is the same: certain persons, under a misconception of the court, are excluded from the grand jury who are qualified to serve on it; but the jury, as actually constituted, is unexceptionable in every other respect. In either case, whether the court is mistaken as to the validity of a law or as to its interpretation, the objection relates so little to the merits of the case that it ought to be taken in the regular order and due course of proceeding.

"There are cases, undoubtedly, which admit of a different consideration, and in which the objection to the grand jury may be taken at any time. These are where the whole proceeding of forming the panel is void; as where the jury is not a jury of the court or term in which the indictment is found; or has been selected by persons having no authority whatever to select them; or where they have not been sworn; or where some other fundamental requisite had not been complied with. But there is no complaint of this kind in the present case: the complaint simply relates to the action of the court in excluding particular persons who might properly have served on the jury. We do not think that this vitiated all the proceedings so as to render them absolutely null and void. It might have sufficed to quash the indictment if the objection had been timely and properly made. Nothing more." 109 U. S. 65 at 70-71.

The principle enunciated in *Gale,* so apposite to the present case, has been applied through the years to other indictments brought by grand juries improperly selected.

In *Rodriguez v. United States,* 198 U. S. 156, 165 (1905), the plaintiffs in error had been convicted of larceny in a District Court of the United States for the District of Puerto Rico. After they had been found guilty by a jury, they moved in arrest of judgment on the ground that the grand jury was not such a body as could legally find an indictment because the jurors were selected by persons having no authority to select them. The motion was overruled and no exception was taken. The Supreme Court held that even if the defect in the method of selection of the grand jury was a matter of substance, the accused, by not objecting to the ruling of the lower court, waived the objection. The Court, through the first Mr. Justice Harlan, said: "We perceive no reason why they could not have legally waived an objection based upon the grounds stated in the motion." In *Kaizo v. Henry,* 211 U. S. 146, 149 (1908), the Supreme Court stated that a conviction of murder was not void even though the indictment had been brought by a grand jury half of whose members may have been disqualified to serve. Mr. Justice Moody, in delivering the Court's opinion, said:

> "Disqualifications of grand jurors do not destroy the jurisdiction of the court in which an indictment is returned, if the court has jurisdiction of the cause and of the person, as the trial court had in this case. *Ex parte Harding,* 120 U. S. 782; *In re Wood,* 140 U. S. 278; *In re Wilson,* 140 U. S. 575. See *Matter of Moran,* 203 U. S. 96, 104. The indictment, though voidable, if the objection is seasonably taken, as it was in this case, is not void. *United States v. Gale,* 109 U. S. 65. The objection may be waived, if it is not made at all or delayed too long. This is but another form of saying that the indictment is a sufficient foundation for the jurisdiction of the court in which it is returned, if the jurisdiction otherwise exists."

That case goes far beyond the present one, in which every juror was competent and qualified.

In *Michel v. Louisiana*, 350 U. S. 91 (1955), three Negroes had been sentenced to death for aggravated rape. The three petitioners challenged the composition of the grand juries which indicted them on the ground that there was a systematic exclusion of Negroes from the panel. The Louisiana statute provided that objections to a grand jury must be raised before the third judicial day following the end of the grand jury's term or before trial, whichever is earlier. In each case, the challenge was filed after the expiration of the statutory period, although, in each case, strong factual reasons were offered as excuses for the delay. The Supreme Court, in a six to three decision, held that the Louisiana statute, as applied, did not violate the Fourteenth Amendment. The Court upheld the finding of the lower courts that the question of the constitutionality of the method of selection of the grand jury had been waived.

Two United States Circuit Court of Appeals' decisions are closely in point to the specific case here presented, where the method of selection of the grand jury which brought the indictment was in accordance with the law then in effect but where the law was declared invalid after the indictment. In *Madison*, we discussed *Ballard v. United States*, 329 U. S. 187 (1946). *Ballard* held that indictments and trials by grand and petit juries from which women had been systematically excluded were invalid. *Dean v. United States*, 169 F. 2d 70 (9th Cir. 1948) and *Wright v. United States*, 165 F. 2d 405 (8th Cir. 1948) involved the validity of indictments brought before *Ballard* by grand juries in federal district courts from which it was admitted women had been deliberately and systematically excluded. In each case, the court held that the defendant had waived the question by failure to make timely objection. In *Dean*, the indictment had been returned in 1933 and the motion to vacate the judgment on the ground that, by reason of the invalid exclusion of women from the grand jury, the court was without jurisdiction to impose any sentence, was not filed until 1947. The court held the infirmity had been waived, even though the government conceded the grand jury had been improperly selected under *Ballard*. In *Wright*, the court quoted from the opinion of the Supreme Court in *Fay v. New York*, 332 U. S. 261 (1947), as follows:

" 'The question is whether a warranted conviction by a jury individually accepted as fair and unbiased should be set aside on the ground that the makeup of the panel from which they were drawn unfairly narrows the choice of jurors and denies defendants due process of law or equal protection of the laws in violation of the Fourteenth Amendment to the Federal Constitution. If answered in the affirmative, it means that no conviction by these special juries is constitutionally valid, and all would be set aside *if the question had been properly raised at or before trial.*' (Italics supplied.)" 165 F. 2d at 407-08.

In considering whether the judgment of a court is null and void, or only voidable upon proper and timely attack, the analogy of the effect of the disqualification of a judge is in point. In *Tumey v. Ohio,* 273 U. S. 510, 535 (1927), the Supreme Court held that to subject a defendant to trial in a criminal case before a judge having a personal interest in convicting him is a denial of due process of law. Tumey had been convicted for violation of the Ohio Prohibition Act. He was tried before the mayor of the village of North College Hill. Under the Ohio law, the mayor could receive no fee unless he found the defendant guilty; moreover, one-half of the fines on conviction went to the village. Chief Justice Taft, in delivering the Court's opinion, held that it was clear under the English and American cases that the pecuniary interest of a judge in a resolution of the subject matter which he was to decide rendered the decision voidable. In his opinion, the Chief Justice said: "He (the defendant) seasonably raised the objection and was entitled to halting the trial because of the disqualification of the judge * * *" The authorities cited in the opinion emphasize that a judgment of an interested judge is voidable but not void. *Phillips v. Eyre,* L.R. 6 Q.B. 1 (1870); *Dimes v. Grand Junction Canal Co.,* 3 H.L.C. 759 (1852). Indeed, "in case of necessity, as where all the judges of a court having exclusive jurisdiction over the subject-matter happen to be interested, the objection cannot prevail." *Phillips v. Eyre, supra,* at 22. This Court came to the same pragmatic conclusion, so that there could be a legal forum of final adjudication, in *Gordy v. Den-*

*nis,* 176 Md. 106, 109, 5 A. 2d 69 (1939). Nevertheless, the principle that a judge is disqualified if he is personally interested in the outcome of the matter he hears is as vital to the due exercise of the court's jurisdiction as is the proper composition of the grand jury which brings an indictment; the judge, particularly when he sits without a jury, as he did in *Tumey,* not only decides the issue of guilt or innocence but arraigns the defendant and rules on questions of evidence—he is the court.

*Tari v. State,* 117 Ohio St. 481, 493-94, 497-98, 159 N. E. 594 (1927), was decided after *Tumey* but involved a conviction before a justice of the peace entered before *Tumey* was decided. At the trial of the case, no objection was made that the justice was disqualified; the contention was raised for the first time when the case came up for a hearing before the Ohio Court of Appeals. On writ of error to the Supreme Court of Ohio, that court held that the conviction was voidable and not void, and that even though the reversal in *Tumey* was based upon the lack of due process of law, the objection to the judge must be seasonably raised. The conviction was affirmed. In its opinion, the court said:

> "This decision must turn in its last analysis upon the distinction to be made between a void and a voidable judgment. If it was a void judgment, it is a mere nullity, which could be disregarded entirely, and could have been attacked collaterally, and the accused could have been discharged by any other court of competent jurisdiction in habeas corpus proceedings. If it was voidable, it is not a mere nullity, but only liable to be avoided by a direct attack and the taking of proper steps to have its invalidity declared. Until annulled, it has all the ordinary consequences of a legal judgment * * *
>
> "If the disqualification of a judge by reason of interest should be held in every instance to destroy the jurisdiction of the court, and to render the judgment null and void, the finality of judgments would be seriously jeopardized. The party whose interests are adversely affected would in every instance decline to

raise the objection and seek to prevail on the merits of the case, and, if unsuccessful, enjoin the execution of the judgment in a collateral proceeding."

See also *In the matter of Steele*, 220 N. C. 685, 689, 18 S. E. 2d 132, *cert. denied* 316 U. S. 686 (1942), in which the court said:

"[E]ven if the disqualification of the trial justice be conceded, by the clear weight of authority the effect would be to render his judgment voidable, and not void."

In all of the cases which have been discussed, the waiver of the accused of the defect in the selection of the grand jury which brought the indictment, or of the disqualification of the judge, was implied by the failure to make timely objection. In the case before us, the waiver could not have been more expressly made. It was given in open court, voluntarily and knowingly, after an explanation by the court and by defendant's privately employed counsel; only after his trial and conviction did the defendant move to withdraw it. We find no deprivation of due process in the trial court's denial of the motion.

## II

The Maryland law, in our opinion, is clear, apart from the federal decisions and decisions in other states to which reference has been made, that the exclusion from the grand jury of persons who do not believe in the existence of a Supreme Being, declared invalid after the indictment had been brought, does not render the judicial proceeding based upon the indictment null and void but only gives the defendant the right, by timely action, to attack it.

Counsel for the defendant, in the argument before us, contended that the terms "invalid" and "unconstitutional" are synonymous with "void". They point to the language of this Court in earlier cases where our predecessors in holding indictments invalid used the term "void". But a case involving the fundamental issue here presented does not turn on semantics; it is the essential nature of the effect of the proceedings which is determinative.

Imprecise use of the terms "void" and "voidable" has not been uncommon in the decisions of this Court or of other courts. Mr. Justice Matthews, in the early civil case of *Ewell v. Daggs*, 108 U. S. 143, 148-49 (1883), pointed out that the words "void and of no effect" are often used in statutes and legal documents in the sense of voidable merely, "that is, capable of being avoided", and not as meaning that the act or transaction is absolutely a nullity, as if it had never existed. See also *Adams v. Adams*, 1 K.B. 536 (1941). In judicial proceedings, it is the decision which is important rather than the verbiage employed to express it. Analysis of the pertinent Maryland cases, even those in which the term "void" has been used, shows that what was meant and decided was that the action was voidable, subject to attack, rather than null and of no legal effect.

In *Clare v. State*, 30 Md. 163, 176 (1869), it was held that an indictment found by grand jurors who had been selected from a list prepared by a deputy clerk instead of by the judges should have been quashed. In its opinion, the Court said: "Any indictment found by them was void, and must be so regarded by the courts as if expressly so declared by statute." Immediately following this statement, however, the Court said that the decided weight of authority in this country is that the right to objection is not confined to a challenge to the array but may be taken by plea in abatement or motion to quash before plea to the merits. The careful indication of when the objection can be made shows that, even under the more liberal rule favored by the Court, the objection still must be timely. If the faulty composition of the grand jury made the indictment void and deprived the court of jurisdiction, the objection could be made at any time.

In *Avirett v. State*, 76 Md. 510, 538, 25 Atl. 676 (1893), it was said: "As the grand jury were not selected and drawn according to law that presentment and indictment found by them against the appellant was absolutely null." However, in that case, the appellant had duly filed a plea in abatement, so that even if the defect in the selection of the grand jury had rendered the indictment voidable, rather than void, the defendant's attack upon it was timely. Moreover, in *Avirett*, the defect in the selection of the jury was not that a class was improperly

excluded but that the names of jurors were not selected by the judge, as the law required. The whole proceeding of forming the panel, therefore, was invalid. In the present case, all the grand jurors were competent and duly qualified and the method of their selection, except for the exclusion of a class, was valid.

*State v. Vincent,* 91 Md. 718, 728, 47 Atl. 1036 (1900), involved the validity of an indictment by a grand jury composed of less than 23 members, as required by law. The defendant had duly filed a general demurrer to the indictment, which was sustained by the lower court and by this Court. Judge Pearce, for the Court, cited with approval decisions of courts in other jurisdictions holding that an indictment by such a defective grand jury was void. However, in his opinion, Judge Pearce said: "It is settled in this State that an objection of this character does not go to the jurisdiction, but is waived by pleading to the merits, and can not avail on motion in arrest of judgment." If the court has jurisdiction, the indictment is voidable rather than of no effect.

*Coblentz v. State,* 164 Md. 558, 562, 166 Atl. 45 (1933), involved the effect upon the validity of the indictment of there being too many persons in the grand jury room instead of too few jurors. During the jury's inquiry prior to their vote, there was present an attorney who represented plaintiffs in civil litigation against the banking institution of which Coblentz was the president. The question of the effect of the admission of the attorney into the grand jury proceedings was raised by a plea in abatement to the indictment. The State demurred to the plea on the grounds that the presence of the attorney was not sufficient to invalidate the indictment and that the plea was filed too late, because it was only filed after the removal of the case from the county of indictment to another county. The demurrer was sustained and the defendant was tried and convicted. On appeal, the conviction was reversed. Chief Judge Bond, for the Court, stated that the presence of the attorney invalidated the indictment upon a plea seasonably filed. It was also held that the plea was not filed too late for consideration. Chief Judge Bond said, if the plea had been filed too late, "there is no necessity of discussing the merits of the objection." After these

conclusions, Chief Judge Bond, in his opinion, proceeded to consider various questions raised at the trial, including introduction of evidence over objection. Had the invalidity of the indictment deprived the court of jurisdiction and rendered the proceedings based on the indictment null and void, any errors in the conduct of the trial would have been immaterial and it would have made no difference whether the plea in abatement was filed before or after removal.

*Kimble v. Bender,* 173 Md. 608, 622-23, 196 Atl. 409 (1938), involved the validity of the acts of a purported justice of the peace who had been appointed to the office under a statute found unconstitutional. In the preceding portion of this opinion, in discussing whether the judicial proceeding here involved is void or only voidable, we compared a proceeding based upon an indictment brought by a grand jury improperly selected to proceedings before a disqualified judge. In *Kimble,* the constitution provided for the office of justice of the peace. The statute which purported to authorize the appointments of the justices was believed to be valid by the Governor who appointed persons thereunder and by the Senate which confirmed his appointments, just as the courts of this State believed the method of jury selection prescribed by the Maryland Declaration of Rights to be constitutional, until the Supreme Court, in effect, decided otherwise. The order of the lower court for the issuance of the writ of mandamus to command Kimble, one of the persons so appointed as justice of the peace, to vacate the office was affirmed because we found the statute authorizing his appointment to be invalid, but we expressly held that his actions under color of title were valid as the acts of an officer *de facto.* Judge Parke, for the Court, said:

> "The appointment of an ineligible person is a nullity, except that the official acts of such a person are regarded as the acts of an officer *de facto.* So the official acts of the ineligible respondent, who has acted as a justice of the peace at large under a valid act but under an invalid appointment, are the acts of a *de facto* officer, whose official acts, if otherwise lawful, and until the respondent's title is adjudged insufficient, are as valid and effectual, where they concern

the public or the rights of third persons, as though he were an officer *de jure. State v. Fahey,* 108 Md. 533, 538, 539, 70 A. 2d 218; *Koontz v. Burgess & Commrs. of Hancock,* 64 Md. 134, 136, 20 A. 1039; *Izer v. State,* 77 Md. 110, 115, 26 A. 282; *Claude v. Wayson,* 118 Md. 477, 84 A. 562."

This Court, for the strong reasons of public policy involved, has consistently upheld the jurisdiction of a court when the parties were properly before it and when the subject matter of the proceeding came within its province. In *Superintendent v. Calman,* 203 Md. 414, 420, 101 A. 2d 207 (1953), the question of the scope of the writ of *habeas corpus* was involved. The petitioner claimed that the statute under which he had been convicted was unconstitutional and that therefore the indictment, trial and sentences were all a nullity. We reversed the order of the lower court granting the writ. Chief Judge Sobeloff, for the Court, said: "This Court has always held that *habeas corpus* is not a proper remedy when the remedy by appeal is or was available and the judgment is not a nullity." He cited with approval *Winegard v. Warden,* 194 Md. 699, 69 A. 2d 685 (1949), *cert. denied,* 339 U. S. 938 (1950), saying:

> "The point on which petitioner there relied was that the statute was unconstitutional because it was claimed that it permits cruel and unusual punishment. This is not the point raised here, but the language of the Court in disposing of the contention is applicable here. The *per curiam* opinion of the Court said: 'A judgment of a superior court of general jurisdiction, which has power to decide all questions involved in a case before it, including constitutional questions and questions as to its own jurisdiction, is not a nullity. In Maryland *habeas corpus* is not a proper remedy when a remedy by appeal is or was available and the judgment is not a nullity.' " 203 Md. at 420.

See also *Bowie v. State,* 234 Md. 585, 200 A. 2d 557, *cert. denied,* 379 U. S. 864 (1964).

We hold that the indictment of Smith by a grand jury se-

lected in accordance with the provisions of the Maryland Declaration of Rights then in effect was not void under the law of Maryland and that, although the method of selection of the jury was subject to attack, the defect could be voluntarily and knowingly waived.

### III

We have consistently held that a defendant in a criminal proceeding may waive even a constitutional provision which applies in his favor. Matters which we have held to have been waived include the questioning of prospective jurors on *voir dire, Lenoir v. State,* 197 Md. 495, 80 A. 2d 3 (1951) ; the constitutionality of the statute under which the defendant was tried, *Martin v. State,* 203 Md. 66, 98 A. 2d 8 (1953) ; specific findings by the jury of convictions of prior offenses in a narcotics case, *Beard v. State,* 216 Md. 302, 140 A. 2d 672 (1958) ; the right to a free transcript of the trial for use in appeal, *Jackson v. Warden,* 218 Md. 652, 146 A. 2d 438 (1958) ; the right to a separate trial, *Young v. State,* 228 Md. 173, 179 A. 2d 340 (1962) ; the voluntariness of a confession, *Prescoe v. State,* 231 Md. 486, 191 A. 2d 226 (1963) and *Fisher v. State,* 233 Md. 48, 194 A. 2d 824 (1963) ; the right to a speedy trial, *Keyes v. State,* 236 Md. 74, 202 A. 2d 582 (1964) ; and the right to court-appointed counsel, *Palacorolle v. State,* 239 Md. 416, 211 A. 2d 828 (1965). In *Williams v. Warden,* 240 Md. 205, 213 A. 2d 579 (1965), we held that the systematic exclusion of Negroes from the array of jurors could be waived.

It is conceded by Smith's counsel that his waiver of the defectiveness of the indictment was made freely and knowingly. Having waived the issue before trial, he cannot withdraw the waiver after his conviction.

### IV

Apart from his contention that the indictment was a nullity, the appellant submits that the court erred in refusing to grant his motions for judgment of acquittal.

The evidence at the trial is uncontradicted that the appellant and the deceased, Helen Wallace, had known each other intimately for some time before the altercation which led to her death. On the evening of August 22, 1964 the appellant and Helen Wallace had a violent argument on North Chester Street

in Baltimore after an evening of drinking together. Paul Bruton, a sergeant in the Marine Corps, witnessed at least part of the altercation from his home on North Chester Street. His vantage point was about 120 feet from the fight. He testified that he saw the appellant stab Helen Wallace with a knife several times and kick her while she was on the pavement. As she crawled toward the appellant, he heard the appellant say "I don't want your blood on me." He did not see any knife in Helen Wallace's hand. The autopsy report stated that Helen Wallace died of multiple stab wounds with two perforations of the right lung and massive hemothorax.

The appellant chose to take the stand in his own defense. He testified that he and Helen had fought before and that she had been convicted of assaulting and stabbing him prior to the fatal altercation. He also testified that she brought the knives involved to the scene and that "he had no alternative but to retaliate." He did not know how many times he stabbed her, but he received "scratches." After the fight, the two were driven in a stranger's automobile to the 2600 block of Oliver Street at the appellant's request. The driver indicated in his testimony that the appellant dragged her out of the automobile. The appellant then left Helen Wallace in the yard next to his legal wife's residence.

The trial judge, in his oral opinion, analyzed the evidence, and found that the multiple stab wounds on the body of the deceased corroborated Sergeant Bruton's testimony and that there was credible evidence of malice. He also found that the failure of Smith to retreat, even if Helen Wallace had attacked him, and the absence of any wounds on his body, effectively rebutted his testimony that he acted in self-defense.

The appellant contends that the State failed to prove malice and that the court below should have granted the motions for acquittal because the testimony shows Smith acted in self-defense. In *Davis v. State,* 237 Md. 97, 104, 205 A. 2d 254 (1964), the appellant argued that there was insufficient evidence of malice; we said, "An actual intent to take life is not necessary for a conviction of murder if the intent is to commit grievous bodily harm and death occurred in consequence of the attack." The several stab wounds alone are evidence of malice.

*Davis, supra,* and *Bruce v. State,* 218 Md. 87, 96, 145 A. 2d 428 (1958) and authorities therein cited. There was ample evidence upon which the trial judge could find the appellant guilty of second degree murder, beyond a reasonable doubt, and therefore, under Maryland Rule 886a., the verdict will not be disturbed. *Howell v. State,* 233 Md. 145, 195 A. 2d 592 (1963). Our ruling as to the conviction of second degree murder makes it unnecessary further to discuss the denial of Smith's motion for a judgment of acquittal of manslaughter. *Clarke v. State,* 238 Md. 11, 18-19, 207 A. 2d 456 (1965).

On all the evidence, we find no error in the denial of Smith's motions for judgment of acquittal.

*Judgment affirmed.*

HORNEY and BARNES, JJ., concur in the result.