WELDON ANTHONY SADLER AND CLIFFORD
TAYLOR SADLER, JR. *v.* STATE OF
MARYLAND

[No. 108, Initial Term, 1967.]

*Decided June 6, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and RUSSELL, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Douglas G. Bottom* for appellant Weldon Anthony Sadler, and *Paul J. Feeley,* with whom was *L. Robert Evans* on the brief, for appellant Clifford Taylor Sadler, Jr.

*Edward F. Borgerding, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Frank H. Newell, III, State's Attorney for Baltimore County,* and *Richard D. Byrd* and *A. Gordon Boone, Jr., Assistant State's Attorneys for Baltimore County,* on the brief, for appellee.

PER CURIAM.

The Appellants, Weldon Anthony Sadler and Clifford Taylor Sadler, Jr., were indicted under identical four-count indict-

ments for (1) statutory rape, (2) rape, (3) assault with intent to rape, and (4) assault. They were found guilty in a non-jury trial in the Circuit Court for Baltimore County of statutory rape and rape. Before sentences were imposed, their motions to dismiss, based on the decision in *Schowgurow v. State,* 240 Md. 121, were granted and they were thereafter re-indicted on the same charges. The cases were removed to Carroll County and on May 11, 1966, in a non-jury trial, they were each found guilty on the third count, assault with intent to rape, and not guilty on the other counts. Motions for a new trial were overruled and they were sentenced to ten years in the Maryland Penitentiary.

The Appellants contend:

1. The lower court erred in overruling their pleas of double jeopardy.

2. Their motions for judgment of acquittal should have been granted because there was no legally sufficient evidence to show any intent to rape or that any force was used or that an assault was committed.

The record indicates that about 9:30 p.m. on the evening of November 25, 1964, the prosecuting witness, a twelve year old Negro girl, was forced into an automobile at the point of a knife and threatened with the loss of her life if she refused. The car was occupied by the Appellants, and three other white individuals. They drove to the vicinity of Pimlico Road in Baltimore County and while en route the prosecuting witness was blindfolded with her scarf and forced to disrobe. According to the testimony of the prosecuting witness, when they arrived in Baltimore County and stopped the car, one of the individuals had intercourse with her in the car while the other four were outside. Thereafter, the other individuals got into the car with her, one at a time, while the others were on the outside and at least one of them forced her to commit a "perverted act." After this, according to the young girl, they heard a woman "hollering" in the distance, whereupon they all got into the car and "drove up a little ways to a fence," stopped the car and got out. At this time, one of the individuals was threatening to kill her and another was helping her to the fence, "so I could run." At this point a police siren was heard and everyone started to

run. She ran to a nearby house and asked the occupants to call the police.

The owner of the house testified that the prosecuting witness knocked on his door shortly before midnight and he immediately called the police.

Branson, who was one of the individuals involved in the events of that night, testified that he saw Clifford Sadler in the car "on top of the girl * * *"; and that he saw Weldon Sadler get into the car with the girl while the others stood outside.

The prosecuting witness was examined by a medical doctor at approximately 3:00 a.m. on November 26, 1964. The doctor testified that he could not find anything suggesting trauma or violence on her, but that there was a laceration of the hymen —without evidence of recent violation.

A representative of the Federal Bureau of Investigation, who had analysed the clothing worn by the Appellants on the night of November 25, 1964, testified that Weldon Sadler's T-shirt contained seminal stain; his shorts and trousers contained seminal stain and sperm cells; that he also found seminal stains on Clifford Sadler's T-shirt and shorts. Another representative of the Federal Bureau of Investigation testified that he examined the clothing of Weldon Sadler and found a negroid pubic hair and head hair on the trousers worn by Weldon Sadler on the evening in question, and a negroid head hair on the shorts, shirt and jacket he was wearing that evening.

## I.

The Appellants contend that in view of their having been found guilty at their first trial of statutory rape and rape, they were automatically found not guilty on the charges of assault with intent to rape and assault since the court made no specific findings on these latter charges. This being so, they argue that their pleas of double jeopardy should have been granted at the second trial, since they had already been tried and found not guilty of these charges.

Assuming, without deciding, that the Appellants are correct in their assertion that the action of the lower court in the first trial amounted to judgments of acquittal on the charges of assault with intent to rape and assault, we are of the opinion that

their second trial did not constitute placing them in double jeopardy.

As was said by the Court of Appeals of Maryland in *Tate v. State,* 236 Md. 312, 316 (1964):

> "It has been held repeatedly in this State that when a traverser has been tried on an indictment or information that is invalid, he is not in jeopardy and he may be indicted and tried again. *State ex rel. Shatzer v. Warden,* 192 Md. 728, 64 A. 2d 711; *Kenny v. State,* 121 Md. 120, 87 Atl. 1109; *Stearns v. State,* 81 Md. 341, 32 Atl. 282."

The Appellants, by their election to have the indictments involved in their first trial declared invalid under *Schowgurow, supra* and *State v. Madison,* 240 Md. 265, bring their cases squarely within the rule set forth in the above case. The Appellants' reliance on *Smith v. State,* 240 Md. 464 is misplaced. They quote the following excerpt from *Smith*:

> "The Maryland law, in our opinion, is clear, apart from the federal decisions and decisions in other states to which reference has been made, that the exclusion from the grand jury of persons who do not believe in the existence of a Supreme Being, declared invalid after the indictment had been brought, does not render the judicial proceeding based upon the indictment null and void but only gives the defendant the right, by timely action, to attack it."

We agree that the holding in *Schowgurow* and *Madison,* both *supra,* "does not render the judicial proceeding based upon the indictment null and void but only gives the defendant the right, by timely action, to attack it." The Appellants, however, exercised the right, by timely action, to attack their indictments. Their attacks resulted in the indictments being held invalid, thus bringing their cases within the rule stated in *Tate, supra.* Accordingly, the lower court did not err in overruling the Appellants' pleas of double jeopardy.

## II.

The Appellants' second contention must be measured by the rule set forth in *Ponder v. State,* 227 Md. 570, 572:

"[T]he test of the sufficiency of the evidence in a case tried before the court without a jury, * * * is whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged."

See also *Duffy v. State,* 243 Md. 425 (1966); *Jones v. State,* 242 Md. 323 (1966); *McCray v. State,* 236 Md. 9, 15 (1964).

We are of the opinion that the evidence before the trial court meets the above test and was legally sufficient to sustain the finding that the Appellants were guilty of the crime of assault with intent to rape.

The record shows that the prosecuting witness was forced into the car occupied by the Appellants and their companions at knife point; threatened with the loss of her life if she refused; blindfolded; forced to remove her clothing; and driven to a secluded location in Baltimore County. While the prosecuting witness was unable to identify, by name, the individuals whom she said had intercourse with her in the car, she did make a courtroom identification of both Appellants as two of the individuals in the car that evening. Branson, another occupant of the car, testified that Clifford Sadler was in the car alone with the young girl and on top of her. He also saw Weldon Sadler enter the car alone with her. In addition, there is the evidence of seminal stain and negroid hairs found on the clothing of the Appellants.

In non-jury trials, the weight of the evidence and the credibility of witnesses is for the trier of the facts to determine. The judgment of the lower court will not be set aside on the evidence unless clearly erroneous. Giving due regard to the opportunity of the trial court to judge the credibility of witnesses, we cannot say that on the evidence before the lower court its judgment was clearly erroneous. Maryland Rule 1086; *Tucker v. State,* 244 Md. 488; *Walters v. State,* 242 Md. 235.

*Judgment affirmed.*